**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DALE A. M.,**

                                          **Plaintiff,**

              **v.**                                          **5:19-CV-1150**
                                                             **(FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                          **Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**LAW OFFICES OF KENNETH**               **JUSTIN M. GOLDSTEIN, ESQ.**
**HILLER, PLLC**                         **KENNETH HILLER, ESQ.**
6000 North Bailey Avenue, Suite 1A
Amherst, New York 14226
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**        **LISA G. SMOLLER, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g)

("Act"), seeking judicial review of a final decision of the Commissioner of Social Security,

denying his application for benefits. _See generally_ Dkt. No. 1.  Pending before the Court are the

parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules

of Civil Procedure. _See_ Dkt. Nos. 14, 22.

## II. PROCEDURAL HISTORY AND BACKGROUND

On June 17, 2015, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 1, 2015.  See Dkt. No. 10, Administrative Record ("AR"), at 80.  On October 9, 2015, the Social Security Administration denied Plaintiff's application.  *See id.*  Thereafter, on October 30, 2015, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  *See id.*   On February 26, 2018, Administrative Law Judge Charles Woode ("ALJ") held a video hearing, in which he presided from St. Louis, Missouri, and Plaintiff, represented by an attorney, appeared from Syracuse, New York.  *See id.*   Glee Ann L. Kehr, an impartial vocational expert, also appeared at the hearing.  *See id.*

On March 13, 2018, the ALJ issued a written decision in which he made the following findings "[a]fter careful consideration of the entire record . . ."

> (1) "[Plaintiff] last met the insured status requirements of the Social Security Act on October 31, 2015."
>
> (2) "[Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of May 1, 2015 through his date last insured of October 31, 2015 (20 CFR 404.1571 *et seq.*)."
>
> (3) "Through the date last insured, [Plaintiff] had the following severe impairments: lumbar degenerative disc disease with right lower extremity radiculopathy, cervical degenerative disc disease, and left carpal tunnel syndrome (20 CFR 404.1520(c))."
>
> (4) "Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."
>
> (5) "After careful consideration of the entire record, I find that, through the date last insured, [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he could occasionally handle, finger, and feel with the

left non-dominant hand.  He could occasionally reach overhead bilaterally and occasionally push or pull foot controls with his right lower extremity.  He could also occasionally stoop, kneel, crawl, and climb ramps or stairs, but never climb ladders, ropes, or scaffolds.  He should avoid concentrated exposure to vibration and hazards such as unprotected heights and dangerous machinery.  Finally, he could rotate his neck only 40 degrees in both directions."

(6) "Through the date last insured, [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565)."

(7) "[Plaintiff] was born on May 1, 1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.15663)."

(8) "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564)."

(9) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)."

(10) "Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a))."

*See* AR at 82-91.

On June 4, 2019, the Appeals Council granted Plaintiff's request for review due to an error in the period that the ALJ had reviewed.  *See* AR at 217-220.  The Appeals Council found that the ALJ had incorrectly cited October 31, 2015, as the date last insured; Plaintiff had been insured through December 31, 2015.  *See id.* at 218.  The Appeals Council concluded, however, that, other than the inaccuracy with the date last insured, the ALJ's unfavorable determination was supported; and the Appeals Council intended to adopt the ALJ's rationale and conclusions that Plaintiff was not disabled between May 1, 2015, and December 31, 2015.  *See id.* at 218.

However, the Appeals Council afforded Plaintiff the opportunity to submit a statement with additional facts or law. *See id.* On July 16, 2019, the Appeals Council issued the Commissioner's final decision, agreeing with the ALJ that, from May to December 2015, Plaintiff's lumbar degenerative disc disease with right lower extremity radiculopathy, cervical degenerative disc disease, and left carpal tunnel syndrome were severe impairments; Plaintiff had a residual functional capacity for a reduced range of light work; and Plaintiff could not perform his past relevant work but could perform other jobs in the national economy. *See id.* at 4-11.

Plaintiff then commenced this action on September 16, 2019, and filed a supporting brief on April 13, 2020. *See* Dkt. Nos. 1, 14. Defendant filed a responsive brief on July 21, 2020. *See* Dkt. No. 22.

## III. DISCUSSION

### A.     Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). When reviewing a denial of disability benefits, a court may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. § 405(g). Rather, a court will reverse the Commissioner's determination only if he did not apply the correct legal standards or there is not substantial evidence in the record to support that determination.

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the Commissioner's finding is supported by substantial evidence, the court must sustain it "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In sum, a reviewing court must accord considerable deference to the ALJ's determination and may not substitute "its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

To be eligible for benefits, a claimant must show that he suffers from a disability within the meaning of the Act.  The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> (1) The ALJ first determines whether the claimant is currently engaged in SGA.  *See* 20 C.F.R. §§ 416.920(b), 416.972.  If so, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(b).

> (2) If the claimant is not currently engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments.  *See* 20 C.F.R. § 416.920(c).  If not, the claimant is not disabled.  *See id.*

(3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).

(4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, he is not disabled. *See* 20 C.F.R. § 416.920(f).

(5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his residual functional capacity ("RFC"), age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then he is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if he cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation and other citations omitted).

**B.    ALJ's RFC finding**

The ALJ's findings with regard to Plaintiff's RFC are as follows:

"[T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he could occasionally handle, finger, and feel with the left non-dominant hand. He could occasionally reach overhead bilaterally and occasionally push or pull foot controls with his right lower extremity. He could also occasionally stoop, kneel, crawl, and climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to vibration and hazards such as unprotected heights and dangerous machinery. Finally, he could rotate his neck only 40 degrees in both directions."

*See* AR at 84. In reaching this RFC determination, the ALJ began by setting forth the two-step process that ALJs must follow to evaluate a claimant's symptoms. *See id.* at 84-85.

He then discussed Plaintiff's subjective allegations that his disability arose from leg pain, back pain, neck pain, shoulder pain, depression, bipolar, and anxiety. *See id.* at 85. The ALJ

- 6 -

then recited Plaintiff's physical capabilities and limitations on a typical day, as provided in his

function report.  *See id.*  Next, the ALJ considered Plaintiff's hearing testimony, in which he

claimed that he was unable to work due to neck and back pain and had issues with carpal tunnel

in his left hand that prevented him from lifting light objects prior to release surgery.  *See id.*  The

ALJ also mentioned that Plaintiff noted memory issues from his depression and anxiety but no

issues with maintaining attention and concentration or understanding direction.  After discussing

Plaintiff's testimony and allegations, the ALJ stated that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's]

statements concerning the intensity, persistence and limiting effects of these symptoms [were]

not entirely consistent with the medical evidence and other evidence in the record."  *See id.*

     The ALJ then stated that he was mindful of a previous ALJ decision issued on February

20, 2015, denying Plaintiff's previous disability claim based on the same symptoms and

complaints Plaintiff was alleging in the present case.  *See id.*  However, the ALJ clarified that

there was no overlap in the disability periods being reviewed and that, in the instant case, he

would only review the issue of disability for the period that Plaintiff was currently claiming, as

the previous decision was *res judicata* for the prior alleged period.  *See id.* at 85-86.

     The ALJ went on to discuss the objective medical evidence supporting his physical RFC

finding, starting with records of Plaintiff's history of neck and back pain from prior to the alleged

onset date.  *See id.* at 86.  The ALJ discussed a 2014 lumbar MRI showing "degenerative

changes" and Plaintiff's February 2015 report to his primary care physician, Dr. Ram, that he was

experiencing lower back and upper left neck pain.  *See id.*  The ALJ also noted Plaintiff's March

2015 EMG testing results on his lower extremities; his subsequent appointment with Dr. Tiso, a

spine specialist, who prescribed Gabapentin and recommended nerve blocks for his alleged 7/10

pain level and limited lumbar range of motion; and his April 2015 reports to Dr. Ram that his medications were not working and that his pain continued at a 4/10 level.  *See id.*

The ALJ continued to discuss Plaintiff's treatment with Dr. Ram, noting his conservative treatment with medications; June 2015 left arm pain despite a left shoulder x-ray that was negative for abnormality; decreased pain level from 10/10 in June 2015, to 4/10 in July 2015; and continued conservative treatment with medication and physical therapy referral.  *See id.*  The ALJ mentioned records of Plaintiff's September 2015 visit with an orthopedic specialist,[1] which showed that Plaintiff noted 4/10 cervical pain and intermittent left hand numbness; EMG results showing mild carpal tunnel syndrome; no acute distress and relatively normal physical examination results with some minimal limitations; and full muscle strength in all extremities. *See id.*  The ALJ also mentioned an October 2015 MRI showing "multilevel overall moderate cervical degenerative disc disease" and an October 2015 visit to Dr. Ram, who recommended pain management after Plaintiff rated his pain at 4/10.  *See id.* at 87.

The ALJ then turned to the consultative opinion of Dr. Kalyani Ganesh, M.D., which was based on a one-time examination.  *See id.*  The ALJ described Dr. Ganesh's findings, wherein Plaintiff appeared to experience no distress, normal physical testing results, and only slight limitations.  *See id.*  This led Dr. Ganesh to conclude that Plaintiff had no gross limitations as to sitting, standing, and walking and "moderate limitations" as to lifting, carrying, pushing, and pulling.  *See id.*

---

[1] The ALJ referred to the orthopedic specialist as Dr. Ram and cited to Exhibit B15F at 12.  *See* AR at 86.  Dr. Ram is Plaintiff's primary care physician, not an orthopedic specialist.  Moreover, Exhibit B15F is the report of Dr. Richard Distefano, who is an orthopedic specialist whom Plaintiff saw in September 2015.  *See id.* at 774.

The ALJ proceeded to discuss his RFC findings regarding Plaintiff's mental impairments. *See id.* He began by discussing the medications Dr. Ram prescribed to Plaintiff in "early 2015" with good results, Plaintiff's cessation of the medication with no issues, and his subsequent continuation of the medication. *See id.* The ALJ then mentioned Plaintiff's consultative examination with Dr. Dennis Noia, Ph.D, in September 2015, which led Dr. Noia to opine that Plaintiff had no mental functioning limitations other than mild limitations with "maintaining concentration and attention for tasks and dealing with stress." *See id.* at 87-88. This opinion was based on a finding of normal mental status and functioning other than depressed and sad mood and constricted affect. *See id.* at 88.

After that, the ALJ addressed his reasons for finding that Plaintiff's subjective complaints were not entirely supported by the evidence. *See id.* The ALJ noted that the level of medical treatment Plaintiff was receiving was inconsistent with his complaints of "debilitating pain and physical dysfunction." *See id.* at 88. The ALJ further stated that the medical records showed Plaintiff's pain was being treated "very conservatively, with medications, injections, and physical therapy," and contained nothing showing that surgery or other, more invasive treatment was suggested, thereby indicating his symptoms were not as severe as alleged. *See id.* Furthermore, the ALJ recognized the absence of typical signs of severe chronic pain, as well as a lack of "consistent pathological clinical signs, significant medical findings, or significant neurological abnormalities," which would typically indicate severe pain precluding Plaintiff from routinely working. *See id.* To this point, the ALJ specifically noted that, contrary to Plaintiff's allegations, the medical evidence showed that his left-hand grip strength and dexterity were normal. *See id.* Additionally, the ALJ stated that, although evidence showed Plaintiff's left upper extremity strength was slightly decreased, this evidence did not comport with Plaintiff's alleged loss of his

ability to use his left limb.  *See id.*  The ALJ also clarified that his RFC finding accommodated

Plaintiff's complaints about dizziness and lightheadedness from his Tramadol prescription

despite there being no evidence that Plaintiff complained about this to his doctors.  *See id.*

Lastly, the ALJ noted his careful observation at the hearing that Plaintiff did not appear to be in

obvious pain or discomfort and lacked the general appearance of someone experiencing severe or

prolonged pain.  *See id.* at 88-89.  The ALJ explicitly stated that this was only one of many

factors that he considered.  *See id.* at 88-89.

Next, the ALJ explained the reasons for the weight he assigned to the opinions of Dr.

Ganesh, Dr. Ram, the State agency Single Decision Maker, Dr. Noia, and State agency

consultant, Dr. Blackwell.  *See id.* at 89.  The ALJ gave Dr. Ganesh's opinion significant weight

because it was consistent with Dr. Ganesh's own examination results, the other medical evidence

showing mild findings, and Plaintiff's history of conservative and non-invasive treatment.  *See

id.*  The ALJ gave Dr. Ram's opinion less weight because (1) it was not consistent with her own

records showing mild findings, (2) it was not consistent with the conservative and non-invasive

treatment Dr. Ram prescribed, (3) despite being a primary care physician, Dr. Ram was not a

specialist, and (4) the specialists Plaintiff saw failed to submit statements in support of Plaintiffs

disability application.  *See id.*  The ALJ gave no weight to the State agency Single Decision

Maker because it was not a medical opinion.  *See id.*

Furthermore, the ALJ stated that he gave significant weight to Dr. Noia's and Dr.

Blackwell's opinions that Plaintiff had at most mild limitations.  *See id.*  According to the ALJ,

these opinions were consistent with each other and the psychological evidence of record, which

showed Plaintiff had his conditions under control with medication.  *See id.*  Finally, the ALJ

gave no weight to the statement of Plaintiff's therapist, Ms. Janet Atkinson, LCSW-R, because

there were no records of her treating Plaintiff during the relevant period and the psychological evidence, as well as Dr. Noia's and Dr. Blackwell's opinions, did not support her statements.  *See id.*

Accordingly, the ALJ concluded that the opinions of Drs. Ganesh, Noia, and Blackwell, the objective medical evidence, Plaintiff's statements to the extent the weight of the evidence supported them, the impartial vocational expert's testimony, and the record as a whole supported his RFC assessment.  *See id.*

### 1. ALJ's finding regarding Plaintiff's subjective allegations

#### a. Plaintiff's position

Plaintiff alleges that the ALJ improperly evaluated his subjective statements about his symptoms when the ALJ found that his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with . . . the record."  *See* Dkt. No. 14 at 23.  In support of this contention, Plaintiff states that the ALJ cited to diagnostic imaging reports that were consistent with his complaints of pain but then interpreted Plaintiff's treatment as being conservative and applied "a sit and squirm analysis."  *See id.*  According to Plaintiff, this was improper because none of his treating doctors questioned his complaints about pain, and the ALJ was not qualified to determine which clinical findings were relevant when "extensive clinical findings" support his subjective complaints.  *See id.* at 24.

Plaintiff further argues that he is not required to receive a certain level of treatment to be deemed disabled and that the ALJ created his own "medico-legal standard" to determine if his symptoms were severe enough to be disabling.  *See id.* at 24 (quoting *Harris v. Colvin*, 149 F. Supp. 3d 435, 450 (W.D.N.Y. 2016)).  In turn, Plaintiff asserts that the ALJ's opinion selectively

cited "irrelevant negative clinical findings" and failed to offset "the otherwise robust record" in support of his symptom complaints. *See id.*

Additionally, Plaintiff points out that the ALJ noted his careful observation of Plaintiff and the fact that he was "not in any obvious pain or discomfort during the hearing." *See id.* Plaintiff argues that this is akin to the ALJ relying upon a "sit and squirm analysis" to discredit his complaints, the propriety of which the Second Circuit has seriously questioned as being beyond the competence of ALJs. *See id.* at 24-25 (quoting *Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir. 1981)). Plaintiff contends that the ALJ failed to note that he needed to stand thirty minutes into the hearing because he was experiencing severe pain while seated. *See id.* at 25. Plaintiff concludes that the ALJ's findings are both inaccurate and legally irrelevant; and, as a result, the Court must remand so that the ALJ can properly evaluate his symptoms. *See id.*

### b. *Defendant's position*

In response, Defendant first argues that the ALJ complied with the legally required two-step standard for assessing Plaintiff's subjective complaints. *See* Dkt. No. 22 at 27. Pursuant to this standard, Defendant asserts that the ALJ discussed statements that Plaintiff made in his Function Report regarding his daily activities and testimony on his functional limitations, treatment, and pain location. *See id.* Defendant also asserts that the ALJ considered objective evidence, which included Plaintiff's prescription treatments for physical and mental impairments, the recommendation he received for a nerve block, the referral for him to receive physical therapy, and Dr. Ram's conservative treatment. *See id.* at 27-28. Defendant contends that, based on careful consideration of this evidence, the ALJ found that Plaintiff's alleged symptoms could reasonably be expected to result from his impairments, but his statements about the intensity,

persistence, and limiting effects of those symptoms were not entirely consistent with the record. *See id.* at 28.  Defendant then recounts and summarizes the various reasons that the ALJ found Plaintiff's statements and testimony "not entirely consistent" with the record.  *See id.* at 28-29. Defendant argues that Plaintiff is incorrect to claim that the ALJ improperly evaluated his subjective complaints because, by finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms about which he complained, the ALJ satisfied the first step in the legally required two-step standard for assessing a claimant's subjective complaints.  *See id.* at 29.  Defendant further argues that the ALJ complied with the regulations for assessing Plaintiff's complaints by considering "the pain factors," which include Plaintiff's daily activities, non-medication treatments, functional limitations, medication and side effects, and pain location.  *See id.* at 29.

Next, Defendant argues that the ALJ was not determining the relevancy of his physical findings, but rather he was considering the treatment Plaintiff received, which federal regulations require him to do.  *See id.* (citing 20 C.F.R. § 404.1529(c)(v)).  Defendant further maintains that the ALJ was permitted to consider objective evidence of record to evaluate Plaintiff's subjective complaints and merely compared the objective medical findings of various physicians to Plaintiff's subjective complaints, as opposed to interpreting medical data.  *See id.* at 30 (citing 20 C.F.R. § 404.1529(c)(2)).  Finally, Defendant asserts that the ALJ did not solely rely on a "sit and squirm analysis" to reach his conclusion, so, to the extent that it was error, it was harmless. *See id.* (citing *Davis v. Comm'r of Soc. Sec.*, No. 1:16-CV-1074, 2017 WL 7049560, at *8 (N.D.N.Y. Nov. 20, 2017), *report and recommendation adopted*, 2018 WL 557868 (N.D.N.Y. Jan 16, 2018)).

### c.  *Analysis*

"As a fact-finder, the ALJ has 'the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence.' . . . Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.' . . ."  *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotations omitted).  "In assessing the credibility of the subjective evidence of pain and disability provided by the plaintiff's testimony, the ALJ considers the objective medical evidence and a number of other factors."  *Osborne v. Astrue*, No. 6:07-CV-0314 (LEK), 2010 WL 2735712, *7 (N.D.N.Y. July 9, 2010) (citing SSR 96–7p).

These factors include the following:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses to relieve pain or other symptoms . . .; and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *8 (citing [SSR 96–7p]).

Here, after consideration of the evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  *See* AR at 85.  In reaching this determination, the ALJ explicitly noted Plaintiff's function report indicating that on a typical day he could stretch, go to doctor appointments, rest, take care of his dog, bathe, shave, feed himself, toilet independently, occasionally cook microwaveable meals, drive and go out alone, pay bills, count change, and handle accounts.  *See id.*  The ALJ also noted that the function report indicated Plaintiff had difficulty getting dressed, reaching to comb his hair, and cooking more often due to his difficulty standing.  *See id.*  The ALJ further noted that Plaintiff did no chores around the home and did not shop.  *See id.*  Likewise, the ALJ noted Plaintiff's hearing testimony that he (1) "felt unable to work" due to persistent neck and back pain, (2) was experiencing left hand difficulty from carpal tunnel, (3) was unable to use his left hand to lift light objects, and (4) had memory issues from his anxiety and depression.  *See id.*  The ALJ also considered that Plaintiff noted no issues with "maintaining attention and concentration or understanding directions."  *See id.*

In discrediting Plaintiff's subjective statements, the ALJ noted inconsistencies between his complaints of pain and the treatment that he received and was recommended for him according to his medical records.  *See id.* at 88.  The ALJ also recognized that Plaintiff did not have many of the typical signs of severe chronic pain.  *See id.*  Similarly, the ALJ pointed out the absence of signs or findings that typically indicate the presence of severe pain that would preclude Plaintiff from routinely working.  *See id.*  Moreover, the ALJ specifically mentioned medical evidence in the record showing that, despite a slight decrease in left upper extremity strength, the evidence did not support the loss of left limb use that Plaintiff alleged.  *See id.*  The ALJ stated that he had accommodated Plaintiff's complaints about dizziness and lightheadedness

from his Tramadol prescription in his RFC finding even though there was no evidence that Plaintiff reported this to his doctors. *See id.* Finally, the ALJ noted that he observed that Plaintiff did not appear to be in obvious pain or discomfort and lacked the general appearance of someone experiencing severe or prolonged pain at the hearing. *See id.* at 88-89.

Based on all of the evidence that the ALJ discussed, the Court finds that he considered objective medical evidence and the relevant factors listed above in his thorough discussion of Plaintiff's daily activities and accompanying difficulties, Plaintiff's pain and symptoms, treatment Plaintiff was receiving, side effects of Plaintiff's medication, and Plaintiff's physical appearance at the hearing. Accordingly, the Court finds that the ALJ's credibility determination is not "patently unreasonable" and is, in fact, well supported by the record.

Moreover, despite Plaintiff's argument to the contrary, the ALJ did not commit error by partially relying on his observations of Plaintiff's lack of apparent pain during the video hearing on February 26, 2018, to discredit Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms. This practice is known as "sit and squirm" analysis. *See Hazlewood v. Comm'r of Soc. Sec.*, No. 6:12-CV-798, 2013 WL 4039419, *10 (N.D.N.Y. Aug. 6, 2013) (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (citations omitted)). Although the Second Circuit has previously noted that an ALJ's observation of a plaintiff's "apparent pain" or lack thereof at a hearing is entitled to "limited weight," it is not "per se" error for the ALJ to take his observations into consideration. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998); *Glenn D. v. Saul*, No. 3:18-CV-1388 (LEK), 2020 WL 1187651, *8 (N.D.N.Y. Mar. 12, 2020) (finding that the ALJ did not err by observing the plaintiff at the hearing "where the observation constituted a relatively minor part of the ALJ's analysis"); *Hazlewood*, 2013 WL 4039419, at *10 (N.D.N.Y. Aug. 6, 2013) (finding that the ALJ did not commit error by applying a "sit and

squirm" analysis of the plaintiff because she did not solely rely on her observations of the plaintiff to discredit the plaintiff's subjective complaints (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998))). Indeed, "the regulations specifically provide that physical demeanor is one of several factors in considering disability." *Hazlewood*, 2013 WL 4039419, at *10 (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (citation omitted)).

Here, the ALJ stated that he "carefully observed" Plaintiff and noted that he did not appear to be experiencing any obvious pain or discomfort. *See* AR at 88. Rather, the ALJ noted that Plaintiff seemed to "lack the general appearance of a person who might have been experiencing severe or prolonged pain." *See id.* The ALJ then stated that his observation of Plaintiff's appearance was not the only factor he considered to assess the consistency of Plaintiff's symptoms but, rather, that this was one of many factors that he could consider in his assessment. *See id.* The ALJ further stated that Plaintiff's "behavior and presentation" at the video hearing were inconsistent with the symptom severity he was alleging. *See id.* at 88-89. Based on the ALJ's discussion of his reasoning for discrediting Plaintiff's symptom allegations and how Plaintiff's appearance was only one of many factors he considered in making his determination, the Court finds that the ALJ's so-called "sit and squirm" analysis was not error requiring remand.

### 2. *ALJ's development of the record for his mental RFC finding*

#### a. *Plaintiff's position*

With regard to the ALJ's mental RFC finding, Plaintiff's first argument is that the ALJ committed a procedural error by citing to a prior ALJ decision from February 20, 2015, and noting a *res judicata* issue without obtaining that prior decision or the administrative record from that decision. *See* Dkt. No. 14 at 19. According to Plaintiff, the ALJ was required to obtain the

file from that previous disability claim and combine it with the current administrative transcript because of this *res judicata* issue and the ALJ's citation to the prior ALJ decision to discount his subjective complaints. *See id.* at 19-20 (citing HALLEX I-2-1-13(B)(1)).  Moreover, Plaintiff contends that the prior ALJ decision is relevant to determining his current disability because it is a binding determination issued within six months of his current alleged onset date. *See id* at 20. As such, Plaintiff claims that, if that prior decision found he was limited to sedentary and unskilled work, then it is unlikely his disability has improved to permit "a range of light work" less than three months later, and the ALJ should have obtained his file from his previous claim. *See id.*

Next, Plaintiff asserts that the ALJ committed error in finding that he had no severe mental impairments or mental non-exertional limitations by relying on a gap in the record created by the absence of mental health treatment notes. *See id.*  Plaintiff states that the ALJ's reliance on the consultative psychiatric opinion of Dr. Noia was error because it was "a one-time snapshot" of Plaintiff's mental health, on which the Second Circuit has repeatedly warned against putting heavy reliance, and the record was incomplete. *See id.* at 20-21 (citing *Estrella v. Berryhill*, 925 F.3d 90, 97-98 (2d Cir. 2019) (noting that ALJs should not heavily rely on the findings of consultative examiners after one examination, especially in the context of mental illness); *Callahan v. Berryhill*, No. 6:17-CV-06245 (MAT), 2018 WL 1616058, at *5 (W.D.N.Y. Apr. 4, 2018) (stating that one-time opinions should not be given significant weight where the consulting doctor does not have a complete record)).  Plaintiff claims that, in line with the Second Circuit's concern, the record was missing many of his treatment notes from the relevant period, which were necessary to give the ALJ the full view of his mental health. *See id.* at 21.  In turn, Plaintiff indicates that the ALJ discredited his treating therapist's opinion because his

mental health treatment notes with her for the relevant period were absent from the record but credited the State agency opinions for being consistent with the incomplete record. *See id.* Plaintiff then cites to various gaps in his records from Oswego Mental Health,[2] where he received treatment every two weeks, despite ongoing treatment at this facility during the times of those gaps. *See id.* at 21-22. Based on these gaps, Plaintiff argues that the ALJ committed error by failing to request the missing records from Oswego County Behavioral Services, where he was treated for four years prior to the 2018 hearing. *See id.* at 22 (citing various cases indicating that it is error for an ALJ to not affirmatively develop the record).

Finally, Plaintiff asserts that the ALJ's error of relying on an incomplete record has been compounded by his reliance on opinions from non-treating State agency consultants because the ALJ found that those opinions were consistent with "the record as a whole" despite the record being incomplete. *See id.* at 22-23. Thus, Plaintiff further contends that the weight the ALJ assigned to the mental health opinions of record and the ALJ's RFC finding are not supported by substantial evidence because the record is incomplete. *See id.* at 23 (citing *Harold W.J. v. Comm'r of Soc. Sec.*, 6:18-CV-146 (ATB), 2019 WL 1410350, at *10 (N.D.N.Y. Mar. 27, 2019) (finding that the ALJ committed error where he relied on a consultative examiner's opinion that was "detrimentally incomplete" because it did not address the plaintiff's limitations as to "several significant work-related activities in 'light work'")). Accordingly, Plaintiff maintains that the Court should remand his case so that the ALJ can properly develop the record. *See id.*

---

[2] Plaintiff refers to mental health treatment facilities called Oswego Mental Health, Oswego Hospital Behavioral Services Division, and Oswego County Behavioral Services in his brief. *See* Dkt. No. 14 at 21-22. Based on the record, it appears that these are all references to the same facility, Oswego Hospital Behavioral Services Division.

### b. *Defendant's position*

In response, Defendant first reiterates the analysis, reasoning, and evidence on which the ALJ relied to find that Plaintiff's depression and anxiety were not severe impairments. *See* Dkt. No. 22 at 18-22. Next, Defendant argues that the ALJ was not citing the prior ALJ's decision for its findings; but, rather, he was citing it merely to acknowledge its existence and define the relevant disability period. *See id.* at 23. Defendant further argues that Plaintiff's reliance on the Agency's Hearings, Appeals & Litigation Law Manual (HALLEX) I-2-1-13(B)(1) is misplaced because that does not provide a basis for requiring the ALJ to combine the prior ALJ decision with Plaintiff's current disability claim folder. *See id.* Defendant asserts that HALLEX I-2-1-13(B)(1) permits the Administration to include a previous decision in a current claim file that involves a possible reopening or *res judicata* issue, but that neither is at issue here because there is no evidence that the current claim presents an issue of *res judicata* or opening Plaintiff's prior claim. *See id.* Additionally, Defendant argues that Plaintiff has not shown how the prior disability claim file is relevant to his current claim or how the ALJ's consideration of that file would change his decision, meaning that he has not shown that he suffered prejudice from the ALJ's decision. *See id.*

Defendant then argues that, contrary to Plaintiff's assertion, the ALJ did not rely on a gap in the record and instead relied on various factors, including Plaintiff's own testimony and reports to his doctors, to determine Plaintiff's mental impairments were not severe. *See id.* at 23-24. Additionally, Defendant argues that it was permissible for the ALJ to rely on Dr. Noia's opinion because it was supported by the mental health evidence in the record showing normal functioning. *See id.* at 24 (citing *Teddy N. v. Berryhill*, No. 8:18-CV-234, 2019 WL 1429519, at *3 (N.D.N.Y. Mar. 29, 2019) (stating that even if a consultative examiner only examines a

plaintiff once, his opinion can be substantial evidence where the record supports it); *Z.J.F. by Conkling v. Comm'r of Soc. Sec.*, No. 6:16-CV-1397, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018)).  To this point, Defendant distinguishes *Estrella v. Berryhill*, on which Plaintiff relies, by noting that the court in *Estrella* found the ALJ committed error based on his failure to address the cyclical nature of the plaintiff's depression, which is not an issue in the present case.  *See id.* (citing *Estrella*, 925 F.3d at 97).  Defendant also distinguishes *Callahan v. Berryhill*, on which Plaintiff relies, because, unlike here, the ALJ in that case omitted parts of the consulting examiner's opinion that showed the plaintiff had greater limitations, which was consistent with the treating physician's findings.  *See id.*  In contrast, Defendant contends that Dr. Noia's consultative examination and opinion support the ALJ's finding at step two of his analysis and are consistent with the evidence of record.  *See id.*

Next, Defendant argues that Plaintiff's main contention, *i.e.*, that the ALJ failed to obtain his records from Oswego Behavioral Health (OBH), is incorrect because on August 11, 2015, the state agency requested records from OBH, which responded that Plaintiff had not been treated there since July 2014, and that all of his records from there were sent in March 2015.  *See id.* at 24, 26 (citing 20 C.F.R. § 404.1512(b)).  Furthermore, Defendant contends that Plaintiff's counsel's failure to object to the exhibits offered, offer additional records, or claim that any records were missing at the hearing should be determinative because the ALJ took reasonable steps to complete the record, and Plaintiff failed to raise any issues when the ALJ gave him the opportunity to do so.  *See id.* at 24-26 (quoting *Jason C. v. Berryhill*, No. 6:17-CV-01106 (TWD), 2019 WL 1409804, at *5 (N.D.N.Y. Mar. 28, 2019) (stating that the ALJ has fulfilled his duty to develop the record where he asks a claimant's attorney if the record is complete and the attorney answers affirmatively).

Defendant then argues that Plaintiff's contentions about the consistency and frequency that he saw his therapist are inconsistent with his own reports to Dr. Noia and are uncorroborated by the mental RFC assessment of his therapist, Ms. Atkinson, which is also dated after his last insured date. *See id.* at 25-26. Similarly, Defendant asserts that Plaintiff has admitted that the only treatment record missing from the relevant period is from an alleged October 2015 appointment, which has not been corroborated. *See id.* Defendant further maintains that since Drs. Noia and Blackwell provided their assessments at the end of September and beginning of October, respectively, the ALJ had enough information about Plaintiff's mental functioning during the time in question. *See id.* Additionally, Defendant states that the record contains OBH records from both before and after the alleged disability period, so it is unlikely that there are missing records for the in between period. *See id.*

Furthermore, Defendant argues that the ALJ did not commit error by relying on the state agency psychologist's opinion because a state agency's consultative opinion can be afforded weight as expert opinion evidence if the medical evidence of record supports it. *See id.* at 26 (quoting *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012)). Accordingly, Defendant claims that the ALJ's reliance on the state agency psychologist's opinion was not error because Dr. Blackwell's opinion that Plaintiff's mental impairments were not severe was supported by Dr. Noia's findings and opinion and the mental health findings of record. *See id.*

Finally, Defendant states that, with regard to the incompleteness of the record, Plaintiff only offered two pages of evidence from Emily Crandell PA-C, dated several years after the last insured date, when the Appeals Council offered him a chance to submit additional evidence to support his claim. *See id.* at 26-27. Defendant concludes that when determining whether the

record is incomplete, the Court should consider the reasonableness of Plaintiff's actions based on the totality of the circumstances.  *See id.* at 27.

### c.  *Analysis*

ALJs are required to consider evidence from a claimant's prior claim file when (1) the current claim pending before the ALJ is "based on a continuing disability review," (2) the current claim pending before the ALJ presents a collateral estoppel issue, (3) the current claim pending before the ALJ presents either a possible reopening or *res judicata* issue, (4) the ALJ has to consider findings made by another "ALJ or the Appeals Council on a prior claim(s) to comply with an Acquiescence Ruling," or (5) the current claim or a prior claim may involve fraud or similar fault.  *See* HALLEX I-2-1-13(B)(1).  None of these situations are present in this case. Although the ALJ cited to the prior ALJ's February 20, 2015 decision denying Plaintiff's prior disability claims and mentioned that the disability period up to that decision date was *res judicata*, this case does not present a *res judicata* issue.  *See* AR at 85-86.  Rather, as Defendant argues, the ALJ cited the prior decision to note that the current claim period does not overlap with that prior alleged disability period and that the prior decision was final and binding on the prior alleged disability period so the ALJ would only consider Plaintiff's disability for the period after that decision was issued.  *See id.*

Additionally, ALJs have the option to consider evidence from a prior claim file necessary when (1) he must "establish a longitudinal medical, educational, or vocational history," or (2) the evidence from a prior claim file could make a difference in the ALJ's disability determination in the current claim.  *See* HALLEX I-2-1-13(B)(2).  Plaintiff argues that the second situation applies here because the prior decision was issued only three months before his current alleged

onset date, so it is unlikely that his functioning improved in that time span from being limited to

sedentary and unskilled work to permitting light work.  *See* Dkt. No. 14 at 20.  However,

Plaintiff has not demonstrated how the prior ALJ's decision would have changed the current

ALJ's decision.  In fact, the current ALJ reviewed Plaintiff's medical records from before, during,

and after the alleged disability period.  *See* AR at 320-867.  Therefore, to the extent that

Plaintiff's functioning before the currently alleged disability period was relevant to the current

ALJ's disability finding, the ALJ already had access to evidence that could shed light on that

functioning.  The fact that the ALJ came to a finding indicating that Plaintiff had less limitations

than the previous ALJ found only three months prior to Plaintiff's alleged onset date speaks to

the difference in how the ALJs weighed the evidence, not the current ALJ's error.  *See Bhuiyan v.*

*Astrue*, No. 2:12-00362 (WJM), 2013 WL 663711, *4 (D.N.J. Feb. 22, 2013) (stating that,

"[w]hile another ALJ might have given more or less weight to the evidence, and . . . evaluated

credibility differently, this Court is tasked only with determining whether the ALJ considered the

record and whether there was more than a scintilla of evidence supporting the finding . . . .").

Accordingly, the Court finds that the ALJ did not commit procedural error by failing to obtain

the prior ALJ's February 20, 2015 decision or the administrative record from Plaintiff's previous

disability claim.

Plaintiff's argument that the ALJ erred by failing to develop the record is also unavailing.

The Second Circuit has firmly established that, based on the non-adversarial nature of social

security proceedings, the ALJ has an affirmative duty to develop the administrative record.  *See*

*Hernandez v. Comm'r of Soc. Sec.*, No. 1:13-CV-959 (GLS/ESH), 2015 WL 275819, *2

(N.D.N.Y. Jan. 22, 2015) (quoting *Felder v. Astrue*, No. 10-CV-5747, 2012 WL 3993594, at *11

(E.D.N.Y Sept. 11, 2012) (quoting *Garcia v. Apfel*, No. 98 CIV. 1370, 1999 WL 1059968, at *5

(S.D.N.Y. Nov. 19, 1999))) (other citation omitted).  Generally, an ALJ should seek additional

evidence or clarification "'when there is a conflict or ambiguity that must be resolved, when the

medical reports lack necessary information, or when the reports are not based on medically

acceptable clinical and laboratory diagnostic techniques.'"  *Jason C. v. Berryhill*, 6:17-cv-01106

(TWD), 2019 WL 1409804, *5 (Mar. 28, 2019) (quoting *Janes v. Colvin*, 15-CV-1518 (GTS),

2017 WL 972110, at *4 (N.D.N.Y. Mar. 10, 2017), *aff'd* 710 F. App'x 33 (2d Cir. 2018) (citing

20 C.F.R. § 404.1520b; *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134

F.3d 496, 505 (2d Cir. 1998))).  However, the ALJ is not required to further develop the record

where all evidence of record is consistent and sufficient, such that the ALJ can make his

determination without additional evidence.  *See Hernandez*, 2015 WL 275819, at *2 (citing 20

C.F.R. § 404.1520b(a)).  Similarly, the ALJ is not required to further develop the record where it

does not contain any "obvious gaps."  *See id.* at *2 (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n.5

(2d Cir. 1999).  Thus, "[t]he 'mere absence of some medical records' is insufficient to show that

the ALJ failed in her duty or that reversible error occurred."  *Jason C.*, 2019 WL 1409804, at *5

(citing *Mauzy v. Colvin*, No 5:12-CV-866 (GLS/ESH), 2014 WL 582246, at *7 (N.D.N.Y. Feb.

13, 2013) ("The Commissioner's implementing regulations recognize that further development of

the record is unnecessary, and administrative law judges may make determinations based upon

existing evidence when it is consistent and sufficient to determine whether a claimant is

disabled.") (citing 20 C.F.R. §§ 404.1520(b)(a), 416.920b(a)).  Additionally, an ALJ need not

take any further steps to develop the record where he asks a claimant's attorney if the records are

complete and the attorney responds affirmatively.  *See id.* at *5 (citing *Orts v. Astrue*, No. 5:11-

CV-0512 (LEK/ESH), 2013 WL 85071, at *3 (N.D.N.Y. Jan. 7, 2013)) (other citation omitted).

Here, the ALJ was not required to develop the record further because the evidence of record was sufficient for him to render a decision, was consistent with that decision, and contained no obvious gaps.  Plaintiff alleges that records from OBH for the relevant period were missing, pointing to several instances in the record where he reported to his doctors that he was still receiving treatment at OBH during the alleged disability period.  *See* Dkt. No. 14 at 21-22.  However, contrary to Plaintiff's assertion, the record shows that the State agency requested records from OBH on August 11, 2015, and OBH responded that Plaintiff had not been seen since July 2014, and that it had sent all records in March 2015.  *See* AR at 70.  Consistent with this, the record also shows that, on March 5, 2015, Plaintiff reported to County of Oswego Council on Alcoholism & Addictions, Inc. that he had ceased treatment at OBH.  *See id.* at 339.  Similarly, one of Plaintiff's own disability reports, as well as other records, indicates that his last visit to OBH was in November 2014.[3]  *See id.* at 245, 279-80.  Although another one of Plaintiff's disability reports in the record indicates that he had a future appointment at OBH scheduled for November 2015, *see id.* at 294, it is unclear if that ever occurred; and, even if it did, the absence of records from this one appointment is not an obvious gap constituting reversible error.  *See Jason C.*, 2019 WL 1409804, at \*5.

Moreover, Plaintiff reported to Dr. Noia in September 2015, that he had been receiving treatment at OBH every 2 weeks for only the past month, meaning that, at most, OBH treatment records for only 2 or 3 appointments in August and/or September 2015 were missing.  *See* AR at 445.  Thus, even assuming Plaintiff resumed treatment at OBH at some point after the State

---

[3] Plaintiff asserts in his brief that his disability reports show treatment from September 17, 2008, through November 2015, but one of his disability reports states that his last visit was November 2014, while another one only states that he had a future appointment in November 2015, with nothing to indicate whether that appointment occurred.  *Compare* Dkt. No. 14 at 21-22, *with* AR at 245, 294.

agency requested the records, that would mean records were only missing during the relevant period from around mid-August 2015 to the end of December 2015.  Dr. Noia then conducted a consultative psychological examination and provided an opinion on September 23, 2015, thereby filling the alleged gap for September.  *See id.* at 445-48.  Dr. Blackwell subsequently conducted a consultative psychological examination and provided an opinion on October 7, 2015, thereby filling the alleged gap for October.  *See id.* at 72.  The ALJ and Drs. Noia and Blackwell had access to all of Plaintiff's records from OBH through August 11, 2015, and the subsequent opinions from Drs. Noia and Blackwell effectively filled any gap regarding Plaintiff's mental health status for the following months.  This is significant because, as Defendant points out, the only appointment records that Plaintiff claims are missing from the record are from the October/November 2015 period, which is around the time Drs. Noia and Blackwell rendered their psychological opinions.  *See* Dkt. No. 14 at 21-22.  Similarly, Defendant notes that the record also contains OBH treatment records from before and after the alleged disability period, indicating that it is unlikely that OBH records from the alleged disability period are missing.  *See* AR at 455-501, 503-07.  As such, there were no glaring temporal gaps in Plaintiff's mental health records for the remainder of the alleged disability period, which ended on December 31, 2015, so the ALJ did not err by failing to request additional OBH records.

This conclusion is underscored by the fact that the ALJ found that both Dr. Noia's and Dr. Blackwell's opinions were consistent with Plaintiff's own testimony and psychological evidence, including mental impairment treatment records from Plaintiff's primary care physician. *See id.* at 83, 87-89.  This evidence was adequate for the ALJ to make his determination regarding the severity of Plaintiff's mental impairments, thereby discharging the ALJ's duty to develop the record.  *See* 20 C.F.R. § 404.1520b(a); *Jason C.*, 2019 WL 1409804 (stating that the

ALJ does not need to seek additional evidence where the evidence of record is "'adequate for the ALJ to make a determination as to disability'" (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996))).

Moreover, even if there were a gap in the record, Plaintiff "'must show that he was harmed by the alleged inadequacy of the record,'" which he has failed to do here. *Gilbert H. v. Saul*, No. 5:20-CV-80 (MAD) 2020 WL 6146596, *3 (N.D.N.Y. Oct. 20, 2020) (quoting *Santiago*, No. 3:10-cv-937, 2011 WL 4460206, at *2 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))).  Plaintiff has not specified the significance of the allegedly missing OBH records, did not indicate at his hearing with the ALJ that records were missing, did not offer the allegedly missing records when the Appeals Council gave him a chance to do so after it reopened Plaintiff's case, and has not offered the records to the Court in support of this action.  *See* AR at 36; *Gilbert H.*, 2020 WL 6146596, at *3 (finding that plaintiff failed to show he suffered harm from possibly missing records where he failed to specify which medical records were missing and how they were significant); *Gonzalez ex rel. Guzman v. Secretary of U.S. Dep't of Health & Human Servs.*, 360 F. App'x 240, 245 n.4 (2d Cir. 2010) (summary order) (finding that there were no issues with the ALJ's development of the record where plaintiff did not identify which records were missing or how they would impact his case); *see also Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 488 n.2 (2d Cir. 2012) (summary order) (noting that the ALJ's decision was based on a fully developed record where he "specifically requested the submission of any additional relevant evidence prior to the administrative hearing, held the record open subsequent to the administrative hearing so that counsel could submit additional evidence, contacted counsel when no further evidence was received, and, at counsel's request, granted an extension of time to obtain evidence").

Similarly, to the extent that Plaintiff argues the ALJ erred by rejecting the RFC assessment of his treating therapist, Ms. Atkinson, this argument fails.  First, there were no records of Plaintiff's treatment with Ms. Atkinson provided for the alleged disability period.  *See* AR at 89.  Additionally, Ms. Atkinson's mental RFC assessment lacked significant details given that it did not state how long or how often Plaintiff treated with her, did not state the onset date for Plaintiff's symptoms or limitations, and was deemed unsupported by the psychological evidence of record, which indicated mild mental impairments.  *See id.* at 83, 87-89, 839-43.  Ms. Atkinson's mental RFC assessment was also dated September 22, 2017, which is nearly two years after Plaintiff's alleged disability period ended.  *See id.* at 843.  Thus, to the extent that Plaintiff argues that the ALJ's rejection of Ms. Atkinson's assessment was based on a gap in the record, this argument is unavailing.  The ALJ did not rely on a gap to reject the assessment but, instead, relied on the fact that it was unsupported and irrelevant to the alleged disability period at issue.  *See id.* at 89.  Moreover, as discussed above, Plaintiff seems to indicate that records of his treatment with Ms. Atkinson or OBH in general would change the ALJ's view of his mental impairment, but he has failed to demonstrate the significance of those records or offer them into evidence despite several opportunities to do so.  *See id.* at 36.  As a result, the Court finds that the ALJ did not commit error by failing to further develop the record and properly rejected the opinion of Ms. Atkinson.

Furthermore, despite the Second Circuit's repeated caution against heavy reliance on findings of consultative physicians after one examination, especially in the context of mental illness, *see Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019), it is well settled that a consultative examiner's opinion based on a one-time examination can constitute substantial evidence supporting an ALJ's decision if the record supports it.  *See Teddy N. v. Berryhill*, No.

8:18-cv-234 (GLS), 2019 WL 1429519, *3 (N.D.N.Y. Mar. 29, 2019) (citation omitted).  This is equally true for a State agency medical consultant's report.  *See Frye ex rel. A.O.*, 485 F. App'x at 487 (citing 20 C.F.R. § 416.927(e)(2)(i)).  Indeed, "[t]he Regulations 'recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims' who's [sic] 'opinions may constitute substantial evidence in support of residual functional capacity findings.'"  *Z.J.F. by Conkling v. Comm'r of Soc. Sec.*, 6:16-CV-1397 (WBC), 2018 WL 1115516, *6 (N.D.N.Y. Feb. 27, 2018) (quoting *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (citing *Delgrosso v.* Colvin, 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015))) (other citations omitted).

Here, the ALJ afforded significant weight to the consultative opinion of Dr. Noia, which was based on a September 23, 2015 consultative examination, and the consultative opinion of Dr. Blackwell, which was based on an October 7, 2015 consultative examination.  The ALJ reasoned that both opinions were consistent with one another and that the psychological evidence of record showed that Plaintiff's mental conditions were well controlled with medication.  The ALJ also considered that there were periods during which Plaintiff was not on medication and only displayed mild deficits during those periods, including during the consultative examinations.  The ALJ reiterated that the record as a whole supported these opinions and, based on the ALJ's discussion of the psychological evidence in his decision, it appears that the record supports the two consultative psychological opinions.  Thus, it is of no matter that Dr. Noia and Dr. Blackwell were consultative examiners.  Moreover, the Second Circuit's rationale for cautioning that ALJs should not afford significant weight to consultative opinions, especially in the mental health context, appears to be irrelevant here.  The Second Circuit's basis for this warning is that one-time examinations may not paint the whole picture of the claimant's mental

health, *see Estrella*, 925 F.3d at 98; but, in this case, the ALJ found that Dr. Noia's and Dr.

Blackwell's opinions were generally consistent with the record as a whole, which, to the extent

that treatment records existed, gave the full picture of Plaintiff's mental health for the relevant

period. *See* AR at 87. This included mental health treatment records from Dr. Ram, who noted

that Plaintiff's condition had improved and was "'mostly well controlled' even without

medications." *See id.* at 87-89.

Moreover, as Defendant argues, Plaintiff's reliance on *Estrella* and *Callahan* is

misplaced. *Estrella* is unlike the current case because there the ALJ gave significant weight to a

consultative examiner's opinion based on its consistency with a few isolated pieces of evidence

in the plaintiff's treating psychiatrist's treatment notes that showed improvement. *See Estrella*,

925 F.3d at 97-98. However, the ALJ there failed to reconcile the consultative opinion's

inconsistency with other evidence in the record showing that the plaintiff's depression was

cyclical. *See id.* In contrast, the evidence of record here indicates that during the relevant

disability period Plaintiff's anxiety and depression were generally controlled with medication and

only mild without medication. *See* AR at 83, 87-89. Therefore, the ALJ's reliance on the

consultative opinions' consistency with the evidence of record does not present the same error

that was present in *Estrella*.

Similarly, *Callahan* can be distinguished from the current case because there the ALJ

failed to mention several of the consultative examiner's observations, which demonstrated that

the plaintiff had greater mental impairments and were consistent with several of the treating

psychiatrist's findings. *See Callahan v. Berryhill*, No. 6:17-cv-06245 (MAT), 2018 WL

1616058, *5 (W.D.N.Y. Apr. 4, 2018). The ALJ there also failed to address a "significant

internal inconsistency" in the consultative examiner's opinion when assigning it great weight.

*See id.*  Here, the ALJ did not omit any of Dr. Noia's or Dr. Blackwell's observations that would demonstrate that Plaintiff was suffering greater mental impairments than those that they noted. *Compare* AR at 87-89 *with* AR at 72, 445-48.  In fact, the opinions of Drs. Noia and Blackwell are consistent with the psychological evidence of record, including the mental treatment records of Dr. Ram, Plaintiff's primary care physician. *See id.* at 72, 87-89, 445, 602, 713, 725. Likewise, there are no internal inconsistencies in Dr. Noia's or Dr. Blackwell's opinions.  *See id.* at 72, 445-48.

Therefore, the Court finds that the ALJ did not commit error by affording significant weight to the consultative opinions of Dr. Noia and Dr. Blackwell in reaching his mental RFC assessment.

### 3.  *ALJ's evaluation of Dr. Ram's medical opinion with regard to his physical RFC finding*

#### a.  *Plaintiff's position*

Plaintiff claims that the ALJ improperly weighed the opinion of Dr. Ram, his treating physician, by failing to apply all of the *Burgess* factors and thereby violating the "treating physician rule."  *See* Dkt. No. 14 at 13.  According to Plaintiff, it is unclear which limitations in Dr. Ram's opinion the ALJ found were unsupported because the ALJ failed to summarize or evaluate Dr. Ram's opinion and only described the limitations as "extreme."  *See id.*

#### (i)    ALJ's consideration of the frequency, length, nature, and extent of Plaintiff's treatment with Dr. Ram

As to the first *Burgess* factor, Plaintiff argues that the ALJ did not consider the frequency, length, nature, and extent of treatment.  *See* Dkt. No. 14 at 13.  In support of this

contention, Plaintiff states that the ALJ "only noted" his longstanding treatment relationship with Dr. Ram without recognizing Dr. Ram as having "the most intimate knowledge of Plaintiff's severe impairments, response to treatment, and symptomology." *See id.* Plaintiff further points to the ALJ's failure to consider that Dr. Ram had copies of his diagnostic imaging reports and treatment notes from other specialists. *See id.* Plaintiff then discusses that, prior to his alleged disability onset date, Dr. Ram treated him for "chronic pain, anxiety, depression, bipolar disorder, lower back pain, right leg numbness, and/or weakness." *See id.* Plaintiff also asserts that, as of April 24, 2015, Dr. Ram has been treating him for worsening lower back pain, and that, as of May 27, 2015, this condition had worsened since his April 24, 2015 visit with Dr. Ram, which supports his alleged May 1, 2015, disability onset date. *See id.* at 13-14.

Plaintiff further elaborates on his treatment history with Dr. Ram, discussing various treatment appointments for various conditions or symptoms, such as chronic pain, anxiety, bipolar disorder, depression, and lower back pain, after his alleged onset date. *See id.* at 14. Plaintiff describes his difficulty getting dressed on May 27, 2015, and other examination findings from Dr. Ram since May 1, 2015, such as "appearing older than stated age," "chronically ill appearance," and "limited left shoulder range of motion." *See id.* Plaintiff additionally points to Dr. Ram noting (1) cervical spine x-rays, which showed worsening condition "with bony foraminal stenosis," (2) "moderate airway obstruction," and (3) review of records and results from other doctors. *See id.* Plaintiff further notes various treatment appointments with Dr. Ram after his date last insured, December 31, 2015, and the fact that Dr. Ram was given treatment notes and reports from other doctors. *See id.* In sum, Plaintiff concludes that the ALJ ignored the first *Burgess* factor, which "clear [sic] supports" Dr. Ram's opinion, by failing to cite to his treatment relationship with Dr. Ram and the records that Dr. Ram reviewed. *See id.* at 14-15.

     (ii)     **ALJ's consideration of the record's support for and consistency with Dr. Ram's opinion**

Next, Plaintiff contends that the ALJ's finding that the limitations Dr. Ram found are not consistent with her own clinical findings is error because the ALJ failed to discuss Dr. Ram's clinical findings and improperly interpreted such clinical findings without a medical expert's review. *See id.* at 15 (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *Carol D. v. Comm'r of Soc. Sec.*, No. 6:18-CV-1181 (ATB), 2020 WL 772668, at *4 (N.D.N.Y. Feb 18, 2020)). Plaintiff argues that the ALJ's RFC finding is inadequate because he merely pointed to Dr. Ram's own treatment notes to discount Dr. Ram's opinion instead of citing to the specialist treatment notes as being inconsistent with Dr. Ram's limitations. *See id.* at 15 (quoting *Littlejohn v. Comm'r of Soc. Sec.*, No. 17-CV-999, 2019 WL 1083693, at *5 (W.D.N.Y. Mar. 7, 2019) (stating that the ALJ "cannot substitute her own judgement for competent medical opinion" to decide whether a finding is inconsistent with the treating source's own opinion); and citing *Balsamo*, 142 F.3d at 80). As such, Plaintiff claims that it was error for the ALJ to reject Dr. Ram's finding of multiple severe impairments and limitations based on the fact that his own lay opinion is inconsistent with Dr. Ram's opinions. *See id.* at 15-16 (citing *Labarge v. Colvin*, No. 7:15-CV-0732 (GTS), 2016 WL 5408160, at *5 (N.D.N.Y. Sept. 28, 2016)).

Plaintiff further contends that the ALJ discounted Dr. Ram's opinion by relying on a gap in the record that was created by a lack of statements from his specialists in support of his disability application. *See id.* at 16. In particular, Plaintiff argues that the absence of statements from his specialists to support his application has no bearing on the accuracy of Dr. Ram's opinion, and the ALJ has otherwise failed to cite anything in his specialists' treatment notes that

is contrary to Dr. Ram's opinion.  *See id.*  According to Plaintiff, this establishes that the ALJ's finding is unsupported by substantial evidence or the proper legal standard.  *See id.*

### (iii)    <u>ALJ's reliance on Dr. Ganesh's opinion</u>

Plaintiff claims that the ALJ afforded Dr. Ganesh's opinion "significant weight" based on "vague reference[s]" to "mild findings" and "conservative and non-invasive treatment," which was insufficient to outweigh Dr. Ram's opinion.  *See id.* at 16-17.  Plaintiff maintains that the ALJ should have given Dr. Ganesh's opinion limited weight because Dr. Ganesh solely based her opinion on a one-time examination without reviewing other evidence, and her opinion conflicts with Dr. Ram's, who is a treating physician. *See id.* at 17 (quoting *Ruffino v. Colvin*, 13-CV-800A, 2015 WL 9582704, at *4 (W.D.N.Y. Oct. 30, 2015)).  Additionally, Plaintiff contends that part of the ALJ's rationale for giving Dr. Ganesh's opinion "significant weight" is due to the opinion's consistency with Plaintiff's "history of conservative and non-invasive treatment," but it is improper for ALJs to inject their notion that impairment severity directly correlates with treatment intrusiveness.  *See id.* (quoting *Mecklenburg v. Astrue*, No. 07-CV-760, 2009 WL 4042939, at *7 (W.D.N.Y. Nov. 19, 2009)).

Moreover, Plaintiff argues that the ALJ improperly characterized the findings of doctors other than Dr. Ram as "mild" because he "oversimplif[ied] those doctors' treatment notes and clinical findings." *See id.*  Plaintiff discusses what these treatment notes and clinical findings show, which, in sum, is a list of physical limitations; and as a result, he concludes that the ALJ's oversimplification of the record requires remand.  *See id.* at 17-18 (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983); *Boehnke v. Colvin*, No. 12-CV-6629 (MAT), 2014 WL 1315552, at *7 (W.D.N.Y. Mar. 28, 2014)).  As such, Plaintiff maintains that the ALJ improperly

relied on Dr. Ganesh's opinion; and, if the ALJ had used the proper legal standards for evaluating

opinions, he would have given Dr. Ram's opinion controlling weight.  *See id.* at 18.  Plaintiff

states that reversal is required because the vocational expert testified that Dr. Ram's opinion

about Plaintiff's limitations would preclude all competitive employment; and, thus, if the ALJ

had properly applied the treating physician rule, the ALJ would have found he was disabled at

Step 5.  *See id.*

Finally, Plaintiff argues in the alternative that, even if the Court finds the ALJ properly

evaluated the medical opinions, Dr. Ganesh's opinion does not support his ability to perform

light work.  *See id.* at 18.  According to Plaintiff, Dr. Ganesh's finding of "no gross limitations,

sitting, standing, or walking" is not the same as standing and walking for 6 out of 8 hours in a

day, nor is "moderate limitations lifting, carrying, pushing, and pulling" the same as lifting and

carrying 10 and 20 pounds occasionally.  *See id.* at 18-19.  Plaintiff further asserts that Dr.

Ganesh's opinion fails to address various limitations listed in the ALJ's RFC finding.  *See id.* at

19.  Similarly, Plaintiff argues that the ALJ failed to explain or describe how the physical RFC

findings are supported by both medical and non-medical evidence, which requires remand for a

proper explanation.  *See id.* (quoting *Tammy H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-851

(ATB), 2019 WL 4142639, at *5 (N.D.N.Y. Aug. 30, 2019)).

### b.  Defendant's position

In rebuttal, Defendant argues that the ALJ properly gave little weight to Dr. Ram's

opinion and relied upon other evidence of record to reach his RFC finding.  *See* Dkt. No. 22 at 5.

Defendant sets forth the treating physician rule and the *Burgess* factors, recounts Dr. Ram's

opinion, and lists out the reasons that the Appeals Council adopted the ALJ's conclusion that Dr.

Ram's opinion should be given less weight, as well as the law that supports such adoption. *See id.* at 5-7. Defendant states that those reasons are as follows:

> (1) Dr. Ram's proposed limitations were inconsistent with the clinical findings in her own records, which showed mild to moderate findings. *See id.* at 6 (citing 20 C.F.R. § 404.1527(c)(3); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order); *Jill D. v. Berryhill*, No. 5:17-CV-1308 (CFH), 2019 WL 936523, at *6 (N.D.N.Y. Feb. 26, 2019)).

> (2) Dr. Ram's proposed limitations were inconsistent with the conservative and non-invasive course of treatment that was prescribed. *See id.* at 7 (citing *Abarzua v. Berryhill*, 754 F. App'x 70, 71 (2d Cir. 2019) (summary order));

> (3) Despite Plaintiff's long-term relationship with Dr. Ram, Dr. Ram is not a specialist, and specialist opinions generally get more weight than primary care physician opinions. *See id.* (citing 20 C.F.R. § 404.1527(c)(2)(i), (c)(5)).

> (4) The pain management and orthopedic specialists whom Plaintiff saw did not submit statements supporting his disability application. *See id.* (citing *Catrain v. Barnhart*, 325 F. Supp. 2d 183, 192 (E.D.N.Y. 2004), for the proposition that the ALJ can rely on the absence of opinions in the record).

> (5) Dr. Ganesh's consultative opinion was more consistent with the medical evidence of record and prescribed course of treatment. *See id.* (citing 20 C.F.R. § 404.1527(c)(4); *Noreen D. v. Berryhill*, No. 6:18-CV-00722, 2019 WL 2171116, at *10-11 (N.D.N.Y. May 20, 2019)).

According to Defendant, these are all good reasons for affording Dr. Ram's opinion little weight and account for the required *Burgess* factors. *See id.* Additionally, Defendant claims that reading the ALJ's decision in its entirety shows that the ALJ acknowledged Dr. Ram's status as a treating source. *See id.* (citing 20 C.F.R. § 404.1527(c)(1); *Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017) (summary order) (stating that the ALJ will satisfy the treating physician rule when he provides good reasons for giving a treating physician's opinion lesser weight that substantively reflect the *Burgess* factors, even if he does not explicitly discuss

such factors)).  Defendant also argues that the ALJ does not have to summarize, credit, or reject a

doctor's entire opinion, and, in fact, is entitled to reject a treating physician's opinion as long as

he has good reasons for doing so.  *See id.* at 8 (quoting *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x

887, 889 (2d Cir. 2007) (summary order)).


### (i)   ALJ's consideration of the frequency, length, nature, and extent of Plaintiff's treatment with Dr. Ram


With regard to Plaintiff's challenge to the ALJ's consideration of the first *Burgess* factor,

Defendant contends that Plaintiff has not shown that he suffered any harm resulting from the

ALJ's characterization of his relationship with Dr. Ram.  *See* Dkt. No. 22 at 8.  Defendant states

that the ALJ discussed many of Dr. Ram's treatment records from both before and during the

relevant disability period in his decision, which shows that the ALJ was aware of the frequency

and nature of the relevant treatment Plaintiff received during the eight-month period in question.

*See id.* (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (stating that the burden of showing

harmful error is usually on the challenger of an agency decision)).  Defendant also argues that

the ALJ "clearly" considered Dr. Ram's possession of other specialists' treatment notes and

records because the length of Plaintiff and Dr. Ram's treatment relationship meant he knew of

the conditions in those notes and records.  *See id.* at 9.  Moreover, Defendant maintains that

Plaintiff failed to show that those specialists' reports contradict the ALJ's analysis of Dr. Ram's

opinion.  *See id.*

In response to Plaintiff's recitation of his pre-onset-date medical appointments, Defendant

asserts that the ALJ was not required to consider evidence of disability beyond the May 2015 to

December 2015 period, and Plaintiff has not shown the relevancy of those appointments.  *See id.*

In any event, Defendant contends that the ALJ considered Plaintiff's February and April 2015 treatment evidence.  *See id.*  Furthermore, in response to Plaintiff's arguments regarding his medical records and reports from the relevant period, Defendant argues that the ALJ is not "required to discuss every piece of evidence submitted."  *See id.* (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order)).  Moreover, Defendant asserts that, if Plaintiff is attempting to cite such evidence to show that the record supports Dr. Ram's opinion, he has failed to prove his contention.  *See id.*

Defendant also states that Plaintiff's June 4, 2015 cervical x-ray results "merely corroborate" the ALJ's finding that his cervical degenerative disc disease was a severe impairment.  *See id.* at 10.  Furthermore, Defendant states that Dr. Ram's opinion did not note respiratory issues or indicate environmental limitations so evidence of Plaintiff's chest x-ray results and pulmonary functioning test cannot substantiate Dr. Ram's opinion.  *See id.* Additionally, Defendant argues that Plaintiff's reference to Dr. Ram's review of other records is merely an attempt to get the Court to impermissibly reweigh the evidence to reach a different conclusion than the ALJ.  *See id.* (citing *Debra T. v. Comm'r of Soc. Sec.*, No. 8:16-CV-0157, 2019 WL 1208788, at *9 (N.D.N.Y. Mar. 14, 2019).  Defendant also notes that Plaintiff's reference to the treatment he received from Dr. Ram after his last insured date is incapable of supporting Dr. Ram's opinion because it occurred outside the relevant period.  *See id.* (citing *Behling v. Comm'r of Soc. Sec.*, 369 F. App'x 292, 294 (2d Cir. 2010) (summary order)).  Defendant then reiterates that the ALJ was not required to cite every record that Dr. Ram reviewed to evaluate the first *Burgess* factor.  *See id.* at 11 (citing *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005)).

     **(ii)**     <u>**ALJ's consideration of the record's support for and consistency with**</u>
                <u>**Dr. Ram's opinion**</u>

With regard to the second and third *Burgess* factors, Defendant argues that the ALJ discussed several of Dr. Ram's reports while summarizing the medical evidence from the relevant period and concluding that Dr. Ram's opinion was inconsistent with her own records. *See* Dkt. No. 22 at 11.  Defendant points out that the ALJ noted several of Dr. Ram's treatment notes from February 2015 through July 2015.  *See id.*  Defendant further argues that the ALJ did not need a medical expert to review Dr. Ram's findings and could properly rely on normal medical observations within Dr. Ram's own records because (1) it is the ALJ's job to resolve material conflicts in the evidence of record; (2) the ALJ did not rely solely on internal conflicts in Dr. Ram's clinical findings, but rather, he also considered Dr. Ram's treatment records, which is allowed; and (3) there is no per se rule prohibiting ALJs from discrediting a treating physician's opinion based on a lack of support from the physician's own normal medical findings. *See id.* at 12 (citing *Terri G. v. Comm'r of Soc. Sec.*, No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *9 (N.D.N.Y. Mar. 22, 2019) (stating that it is within the ALJ's "purview" to resolve material conflicts in the evidence); 20 C.F.R. § 404.1527(c)(3) (discussing ALJs giving more weight to opinions that are supported by signs and findings); *Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (summary order) (finding that ALJ properly gave opinions little weight where they were unsupported by record evidence of clinical findings)).

Similarly, Defendant contends that the ALJ did in fact discuss the specialists' findings, which 'clearly do not support Dr. Ram's' findings, when he summarized that evidence.  *See id.* Defendant points to several times that the ALJ noted the specialists' findings throughout his RFC finding.  *See id.* at 12-13.  Defendant reiterates that the ALJ gave several good reasons for

affording Dr. Ram's opinion little weight and points out that the ALJ relied on Dr. Ganesh's consultative opinion in addition to Dr. Ram's treatment notes.  *See id.* at 13.

In addition, Defendant asserts that, contrary to Plaintiff's argument, the ALJ did not rely on a gap in the record by failing to request opinions from Plaintiff's specialists because "lack of a medical source statement does not make a record incomplete," and the record included opinions from both Dr. Ram and Dr. Ganesh, so there was no gap to fill.  *See id.* at 14 (citing *Streeter v. Comm'r of Soc. Sec.*, No. 5:07-CV-858 (FJS), 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011) (stating that absence of a medical source statement does not create a gap if the ALJ's decision was based on sufficient and consistent evidence)).

### (iii)     ALJ's reliance on Dr. Ganesh's opinion

Defendant maintains that the ALJ was permitted to afford more weight to Dr. Ganesh's opinion than to Dr. Ram's because Dr. Ganesh's opinion was supported by substantial evidence. *See* Dkt. No. 22 at 14-15 (citing *Teddy N.*, 2019 WL 1429519, at *3 (stating that even if a consultative examiner only examines a plaintiff once, his opinion can be substantial evidence where the record supports it); *Z.J.F. by Conkling*, 2018 WL 1115516, at *6).  Defendant further claims that, contrary to Plaintiff's assertion, the ALJ discussed Dr. Ganesh's mild findings and examination results before finding that this evidence did not support Dr. Ram's limitations, and the ALJ was permitted to consider the nature of Plaintiff's treatment to evaluate the opinions in the record.  *See id.* at 15 (citing *Abarzua*, 754 F. App'x at 71 (stating that the ALJ did not err by finding that opinion was contradicted by substantial evidence in the record, including plaintiff's conservative treatment)).  Defendant also argues that the evidence to which Plaintiff cites to show that the ALJ "oversimplified" the evidence supporting Dr. Ganesh's opinion fails to detract

from the ALJ's decision because (1) while on October 9, 2015, Plaintiff had tenderness in his cervical spine with limited range of motion, this seems to be an intermittent worsening was merely intermittent worsening with subsequent improvement; (2) several of the examinations Plaintiff cites occurred prior to the relevant period in question, while others do not support Dr. Ram's opinion; (3) Plaintiff failed to show his muscle spasms lasted for 12-months as 20 C.F.R. § 404.1509 requires; and (4) Plaintiff's x-ray, MRI, and EMG/NCS testing was diagnostic and confirms the ALJ's findings on the severity of Plaintiff's lumbar degenerative disc disease. *See id.* at 15-16.  Defendant further states that, since Dr. Ram's opinion is unsubstantiated, the vocational expert's testimony based on Dr. Ram's limitations fails to undermine the ALJ's decision. *See id.* at 16 (citing *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014)).

Finally, Defendant addresses Plaintiff's argument that, even if the ALJ properly evaluated the opinion evidence, Dr. Ganesh's opinion does not support the RFC finding. *See id.* at 17. Defendant argues that Plaintiff has failed to explain how someone with no standing and walking limitations would be incapable of performing six hours of full range light work. *See id.* Likewise, Defendant argues that Plaintiff has failed to cite to evidence supporting his contention that moderate lifting, carrying, pushing, and pulling limitations are inconsistent with lifting or carrying 10 pounds frequently and 20 pounds occasionally. *See id.* (citing 20 C.F.R. § 404.1567(b)).  Moreover, Defendant contends that the ALJ did not substitute his own opinion by imposing limitations not found in Dr. Ganesh's opinion because RFC findings are not required to perfectly match the entirety of any one medical opinion and may be based on the record as a whole, which is what occurred here. *See id.* at 17-18 (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order); *Martinez v. Comm'r of Soc. Sec.*, No. 3:16-CV-0908, 2017 WL

2633532, at *3 (N.D.N.Y. June 15, 2017)).  Defendant further asserts that the ALJ sufficiently

explained how the RFC finding was supported by the evidence, which included opinions,

objective medical evidence, clinical findings, and testimony.  *See id.* at 18.  Accordingly,

Defendant concludes that the ALJ did not commit error.  *See id.*

### c.  Analysis

The treating physician rule "mandates that the medical opinion of a claimant's treating

physician is given controlling weight if it is well supported by medical findings and not

inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.

2000) (citing 20 C.F.R. § 416.927(d)(2)).  However, treating physicians' opinions are "'not

afforded controlling weight where . . . the treating physician issued opinions that are not

consistent with other substantial evidence in the record . . . .'" *Petrie v. Astrue*, 412 F. App'x

401, 405 (2d Cir. 2011) (summary order) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d

Cir. 2004) (per curium)).  An ALJ may also properly afford less than controlling weight to a

treating physician's medical source statement where the "medical source statement conflict[s]

with his own treatment notes[.]" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013)

(summary order).  "An ALJ who refuses to accord controlling weight to the medical opinion of a

treating physician must consider various 'factors' to determine how much weight to give to the

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (*per curiam*) (citing 20 C.F.R.

§ 404.1527(d)(2)).  These factors include the following: "(i) the frequency of examination and

the length, nature and extent of the treatment relationship; (ii) the evidence in support of the

treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv)

whether the opinion is from a specialist; and (v) other factors brought to the Social Security

Administration's attention that tend to support or contradict the opinion." *Id.* (citation omitted).

The Second Circuit has held, however, that ALJs are not required to evaluate each of these factors. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citation omitted). Furthermore, "a non-examining source's opinion may override the opinions of treating sources, 'provided they are supported by evidence in the record.'" *Pickett v. Colvin*, No. 3:13-CV-0776 (LEK), 2015 WL 5749911, *9 (N.D.N.Y. Sept. 30, 2015) (quoting *Santos-Sanchez v. Astrue*, 723 F. Supp. 2d 630, 638 (S.D.N.Y. 2010) (citing *Schisler*, 3 F.3d at 568)).

As an initial matter, "'[a]n ALJ does not have to state on the record every reason justifying a decision,' nor is an ALJ 'required to discuss every piece of evidence submitted.'" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (quoting *Brault*, 683 F.3d at 448 (quotation marks omitted)). Although the ALJ did not summarize Dr. Ram's opinion before affording it little weight, he did summarize Plaintiff's treatment records with Dr. Ram and concluded that Dr. Ram's opinion was not consistent with Dr. Ram's own clinical findings or the conservative and non-invasive treatment that Dr. Ram prescribed. *See AR at 86-89.* The ALJ also explicitly noted that, although Dr. Ram is Plaintiff's long-term primary care physician, Dr. Ram is not a specialist and that Plaintiff's pain management and orthopedic specialists did not submit statements supporting his application. *See id.* at 89. Significantly, ALJs are permitted to afford more weight to the opinions of specialists in their areas of expertise and rely on the absence of opinions when making a disability determination. *See* 20 C.F.R. § 404.1527(c)(5); *Caridad H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-893 (TWD), 2019 WL 3253228, *7 (N.D.N.Y. July 19, 2019) (stating that "[t]he ALJ is entitled to rely on what the record says as well as what it does not say" (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)) (other citation omitted)). Finally, the ALJ stated that he found Dr. Ganesh's opinion more consistent with the record as a whole than that of Dr. Ram. *See AR at 89.* Therefore, despite not having

summarized Dr. Ram's opinion,[4] it is clear that the ALJ appropriately evaluated Dr. Ram's findings and identified good reasons for giving Dr. Ram's opinion less weight than Dr. Ganesh's. *See Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007); *Giles v. Colvin*, 2017 WL 2533191, *4 (W.D.N.Y. June 12, 2017) (stating that "where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability'" (quoting *Mongeur*, 722 F.2d at 1040)).

### (i)     ALJ's consideration of the frequency, length, nature, and extent of Plaintiff's treatment with Dr. Ram

The ALJ did not fail to consider the frequency, length, nature, and extent of treatment that Plaintiff received from Dr. Ram.  Plaintiff first takes issue with the ALJ's description of Dr. Ram's relationship with him and knowledge of his medical conditions.  However, the ALJ summarized Plaintiff's treatment records with Dr. Ram, which included notations of Plaintiff's pain and symptom reports to Dr. Ram, medications Dr. Ram prescribed to Plaintiff, tests Dr. Ram ordered for Plaintiff, results of those tests, the conservative nature of Plaintiff's treatment with Dr. Ram, and Dr. Ram's referral of Plaintiff to specialists.  *See* AR at 86-87.  The ALJ's summarization of Plaintiff's treatment history with Dr. Ram shows that the ALJ considered Dr. Ram's familiarity with Plaintiff's conditions and symptoms, and which treatments were appropriate.  *See* AR at 86-87.  Moreover, the first *Burgess* factor only requires the ALJ to consider the frequency, length, nature, and extent of Plaintiff's treatment with Dr. Ram, and the

---

[4] As Defendant notes in his brief, Plaintiff has failed to cite any authority that requires ALJs to summarize a doctor's entire opinion or credit or reject each limitation therein.  *See* Dkt. No. 14 at 13.

ALJ explicitly noted that Dr. Ram was Plaintiff's primary care physician, that Plaintiff had a long-term treatment relationship with Dr. Ram, that Dr. Ram treated Plaintiff conservatively and non-invasively, and that Dr. Ram treated Plaintiff for both physical impairments and mental impairments. *See id.* at 86-87, 89.

Additionally, Plaintiff's argument that the ALJ committed error by failing to cite to the fact that Dr. Ram received and reviewed records of Plaintiff's treatment from specialists is unavailing. Plaintiff has failed to point to any authority that requires that ALJs explicitly discuss a treating physician's access and review of a claimant's records with specialists. As discussed above, ALJs are not required to discuss every piece of evidence that a claimant submits. *See Bonet ex rel. T.B.*, 523 F. App'x at 59. Moreover, the specialist treatment notes and reports to which Plaintiff refers are in the administrative record, with many of them indicating either that Dr. Ram referred Plaintiff to the specialist or that copies were sent to Dr. Ram. *See* AR at 350, 440, 507, 515, 521, 557, 664, 798, 801, 808, 810, 815, 819, 822. Thus, in reviewing Plaintiff's specialists' medical records, the ALJ was clearly aware that Dr. Ram had copies of or access to these records as well. Similarly, the ALJ repeatedly noted Plaintiff's ongoing treatment with Dr. Ram and noted several of Plaintiff's appointments with specialists in his explanation of his RFC finding. *See id.* at 86-89. Therefore, it is unclear how Plaintiff was harmed by the ALJ's failure to explicitly discuss Dr. Ram's knowledge of Plaintiff's treatment with specialists or how the ALJ's physical RFC finding would have been different had he explicitly considered such treatment.

Moreover, Plaintiff's recitation and discussion of his treatment with Dr. Ram and the corresponding treatment notes from before, during, and after the alleged disability period fails to substantiate his contention that the ALJ did not consider the frequency, length, nature, and extent

of his treatment relationship with Dr. Ram.  As Defendant argues, the ALJ was only required to

consider evidence of Plaintiff's disability between May 2015 and December 2015; and, in any

event, the ALJ explicitly considered Plaintiff's February 2015 and April 2015 treatment with Dr.

Ram when reaching his RFC finding.  *See id.* at 86.  Thus, to the extent Plaintiff argues that the

ALJ ignored relevant treatment evidence from immediately before the alleged disability period,

he is incorrect; and the ALJ considered more than was required.  Additionally, Plaintiff has not

shown how such treatment evidence from before the alleged disability onset date was relevant to

the ALJ's physical RFC finding.  Instead, Plaintiff merely recites his treatment history with Dr.

Ram from as early as September 2013, through the alleged May 1, 2015 disability onset date and

concludes that the treatment notes support this onset date because they indicated on May 27,

2015, that his condition had worsened since his April 24, 2015 visit with Dr. Ram.  However,

this merely supports a conclusion that Plaintiff may have been suffering from an impairment as

of May 1, 2015, which is not necessarily inconsistent with a non-disability finding or an RFC

finding that does not impose significant limitations.  *See McIntyre v. Colvin*, 758 F.3d 146, 151

(2d Cir. 2014) (stating that "an ALJ's decision is not necessarily internally inconsistent when an

impairment found to be severe is ultimately found not disabling"); *Christine M. v. Saul*, No.

8:18-CV-1358 (DJS), 2019 WL 5307316, *3 (N.D.N.Y. Oct. 21, 2019) (stating that "[t]here is

thus no inherent error in an ALJ's determination simply because an ALJ finds a plaintiff has a

severe impairment, but does not assign corresponding functional limitations").

Likewise, Plaintiff merely recites Dr. Ram's treatment notes and record from both during

and after the alleged disability period and then concludes that the ALJ did not cite to "the

treatment relationship and the records reviewed by Dr. Ram" so the first *Burgess* factor "clear

[sic] supports" Dr. Ram's opinion.  However, this conclusion is flawed as Plaintiff does not show

how citation to such treatment records would have changed the ALJ's finding; does not explain how failure to cite this evidence establishes that the first *Burgess* factor supports Dr. Ram's opinion; and ignores established Second Circuit law that (1) ALJs do not need to cite to or discuss every piece of evidence in the record, *see Bonet ex rel. T.B.*, 523 F. App'x at 59; *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) (stating that "'an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered'" (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)), and (2) ALJs do not need to consider evidence outside of the relevant period in question, *see Krach v. Comm'r of Soc. Sec.*, No. 3:13-CV-1089 (GTS/CFH), 2014 WL 5290368, *9 (N.D.N.Y. Oct. 15, 2014) (stating that "the ALJ is under no obligation to consider evidence from a time before the relevant period"); *McManus v. Comm'r of Soc. Sec.*, 298 F. App'x 60, 61 (2d Cir. 2008) (summary order) (finding "no error" when ALJ excluded additional evidence that plaintiff offered because the evidence "pre-dated the time period the ALJ was required to consider").  Furthermore, "to the extent that Plaintiff points to evidence in the Administrative Record that reasonably might support a conclusion that [he] is disabled, 'whether there is substantial evidence supporting the appellant's view is not the question' on appeal."  *Clark v. Comm'r of Soc. Sec.*, No. 7:13-CV-256 (FJS), 2016 WL 1057047, *6 (N.D.N.Y. Mar. 14, 2016) (quotation omitted); *see also Debra T. v. Comm'r of Soc. Sec.*, No. 8:16-CV-0157 (TWD), 2019 WL 1208788, *9 (N.D.N.Y. Mar. 14, 2019) (stating that "[t]he Court will not now reweigh evidence which was before the ALJ" (citations omitted)).

Accordingly, the Court finds that the ALJ adequately considered the frequency, length, nature, and extent of Plaintiff's treatment with Dr. Ram when he afforded less than controlling weight to Dr. Ram's opinion.

(ii)     **ALJ's consideration of the record's support for and consistency with Dr. Ram's opinion**

The ALJ adequately considered the record's support for and consistency with Dr. Ram's opinion.  Plaintiff's first assertion that the ALJ failed to discuss any of the clinical findings in Dr. Ram's own records is baseless.  As stated above, the ALJ discussed records of Dr. Ram's treatment of Plaintiff's lower back and upper neck pain in February 2015, *see* AR at 86; results from Plaintiff's March 2015 EMG study on his lower extremities for which Dr. Ram referred him, *see id.*; Dr. Ram's treatment notes after seeing Plaintiff in April 2015, *see id.*; June 2015 x-ray results on Plaintiff's left shoulder that were negative for abnormality, *see id.*; Dr. Ram's treatment notes after seeing Plaintiff in June and July 2015, *see id.*; and Dr. Ram's treatment notes from October 2015, *see id.* at 87.  Additionally, in discussing his finding that Plaintiff's allegations and testimony were not entirely consistent with the medical evidence, the ALJ discussed that the records did not show certain observable physical manifestations that were common when severe chronic pain was present and that the records showed intact left-hand grip strength and normal hand and finger dexterity, contrary to Plaintiff's allegations.  *See id.* at 88. Additionally, to the extent that Plaintiff argues that the ALJ was required to discuss every single clinical finding that he found to be inconsistent with or unsupportive of Dr. Ram's limitations, that argument fails because, again, the ALJ is not required to discuss or cite to every piece of evidence in the record.  *See Bonet ex rel. T.B.*, 523 F. App'x at 59; *Barringer*, 358 F. Supp. 2d at 78-79.

Similarly, Plaintiff's contention that the ALJ committed error by improperly interpreting the clinical findings in Dr. Ram's records without the assistance of a medical expert's review is

without merit.  The ALJ reviewed and summarized the relevant medical evidence of record, including opinions from Dr. Ram and consultative examiner Dr. Ganesh, results from various tests and studies from before and during the alleged disability period, treatment notes of both Dr. Ram and other specialists from before and during the alleged disability period, and the course and nature of treatment Dr. Ram and specialists prescribed.  *See* AR at 86-89.  While reviewing such evidence, the ALJ took note of various medical observations in the available treatment notes and eventually concluded that Dr. Ram's opinion that Plaintiff had severe physical limitations was not entirely supported and consistent with the record, including Dr. Ram's own records.  *See id.*  In contrast, the ALJ concluded that Dr. Ganesh's opinion that Plaintiff had moderate limitations was consistent with the record, including Dr. Ganesh's examination results. *See id.* at 89.  Accordingly, the ALJ gave less weight to Dr. Ram's opinion than to Dr. Ganesh's opinion.  *See id.*  This is not akin to the ALJ substituting his own lay opinion for that of Dr. Ram; but, rather, it is a matter of the ALJ weighing the evidence, as he is required to do, and resolving conflicts in the medical and opinion evidence at hand, as he is permitted to do.  *See Terri G. v. Comm'r of Soc. Sec.*, 3:18-CV-0066, 2019 WL 1318074, *9 (N.D.N.Y. Mar. 22, 2019) (stating that it is "within the ALJ's purview to resolve material conflicts in the evidence and various opinions of record" and that "the ALJ's resolving such conflicts in the medical evidence is not interpreting raw medical data or substituting his own lay opinion for that of a medical professional" (citations omitted)); *Christina M.F. v. Berryhill*, No. 5:17-CV-0840 (GTS), 2019 WL 147463, *7 (N.D.N.Y. Jan. 9, 2019) (stating that "the ALJ did precisely what she was expected to do: consider all of the opinion evidence and balance the differing opined limitations in light of the evidence as a whole when formulating the RFC").

The ALJ's finding that Dr. Ram's opinion was inconsistent with her own records or the course of prescribed treatment was not based upon the ALJ's own analysis of raw medical data or bare medical findings but, rather, on the record's consistency with Dr. Ganesh's opinion evidence; Dr. Ram's opinion's inconsistency with the mild to moderate medical observations from clinical findings and examinations as described in the treatment notes of record; Dr. Ram's opinion's inconsistency with the nature of Dr. Ram's prescribed treatment; Dr. Ram's status as a primary care physician, as opposed to a specialist; and the absence of statements from Plaintiff's pain management and orthopedic specialists supporting his application despite these specialists treating him and having more medical expertise than Dr. Ram in the area of the relevant impairments.  *See* AR at 89.  In combination with the ALJ's summary of the medical and opinion evidence of record, these reasons for discounting Dr. Ram's opinion provide ample support to permit the Court "to glean the rational [sic] of [the] ALJ's decision" without the ALJ explicitly explaining every detail of "why he . . . considered particular evidence persuasive or not persuasive." *Didomenico v. Comm'r of Soc. Sec.*, No. 1:14-CV-737, 2015 WL 5603361, *9 (N.D.N.Y. Sept. 21, 2015) (citing *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (quoting *Mongeur*, 722 F.2d at 1040 (internal quotation marks omitted))); *see also Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) (summary order) (holding that, "although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination").

Moreover, as Defendant points out, there is no per se rule that ALJs are prohibited from discounting a treating physician's opinion because it is inconsistent with or unsupported by the

physician's own examination findings. *See Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (finding that it was proper for ALJ to afford treating physician "opinions little weight because record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in these opinions" (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (stating that treating physician's opinion is not controlling when contradicted by "other substantial evidence in the record"))). Indeed, it is established law that "[w]here a doctor's medical source statement conflicts with his or her treatment notes, the ALJ is justified in not according controlling weight to the doctor's statement." *James N. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1324 (CFH), 2020 WL 1140498, *7 (N.D.N.Y. Mar. 6, 2020) (citing *Cichocki v. Astrue*, 534 F.3d 71, 76 (2d Cir. 2013)) (other citation omitted). Therefore, Plaintiff's argument that the ALJ improperly afforded Dr. Ram's opinion less than controlling weight based on the opinion's inconsistency with Dr. Ram's own records and the ALJ's own lay opinion fails.

Furthermore, Plaintiff's assertion that the ALJ did not cite any of the specialists' treatment notes as being inconsistent with or unsupportive of Dr. Ram's opinion is also meritless for similar reasons. The ALJ discussed the March 2015 treatment notes of Dr. Tiso, a spine specialist whom Plaintiff saw, noting that Dr. Tiso observed Plaintiff had normal spinal alignment, paraspinal tenderness, and limitations in range of motion, as well as Plaintiff's reporting of a 7/10 pain level and challenges with postural maneuvers. *See* AR at 86. The ALJ also noted that Dr. Tiso treated Plaintiff with Gabapentin and recommended nerve blocks for his pain. *See id.* Additionally, the ALJ discussed a September 2015 appointment at which Plaintiff saw orthopedic specialist, Dr. Richard Distefano. *See id.* 86 (citing *id.* at 774). The ALJ mentioned that Dr. Distefano noted that Plaintiff's cervical spinal pain had increased in the past year but was only rated a 4/10 at that moment and that Plaintiff reported intermittent left hand

numbness.  *See id.*  The ALJ further discussed that EMG results were mildly abnormal; lack of acute distress and normal functioning upon physical examination; generally full, painless ranges of motion in various areas other than "minimally limited" ranges of motion in the cervical and lumbar spine; and full muscle strength in all extremities, despite complaints of left arm and hand weakness.  *See id.*  Finally, the ALJ noted that Dr. Distefano referred Plaintiff for another cervical spine MRI, which was conducted in October 2015 and showed "multilevel overall moderate cervical degenerative disc disease."  *See id.* at 87.  Based on this discussion of Plaintiff's specialists' medical records, the ALJ clearly discussed the specialists' treatment notes. More to the point, the ALJ's discussion of the specialists' records indicates that the objective medical findings and treatment notes showed Plaintiff's impairments were mild to moderate, which was not entirely consistent with Dr. Ram's opinion that Plaintiff had severe physical limitations.  As such, although the ALJ did not explicitly cite Dr. Tiso's and Dr. Distefano's records as being inconsistent with Dr. Ram's opinion, he did summarize their records and subsequently conclude that Dr. Ram's opinion was not entirely consistent with or supported by the record, which permits the Court "to glean" the ALJ's rationale for affording Dr. Ram's opinion less than controlling weight.  *See Didomenico*, 2015 WL 5603361, at *9.

Finally, Plaintiff contends that, since his specialists did not provide opinions on his physical functioning, there was a gap in the record and that the ALJ relied on that gap by partially relying on the absence of those opinions to discredit Dr. Ram's opinion.  The relevant law is to the contrary.  The absence of opinions from Plaintiff's specialists did not cause a gap in the record because, as this Court has previously stated, "the lack of a medical source statement will not make the record incomplete" as long as the ALJ's decision is "based on 'sufficient' and 'consistent' evidence."  *Streeter v. Comm'r of Soc. Sec.*, No. 5:07-CV-858 (FJS), 2011 WL

1576959, *3 (N.D.N.Y. Apr. 26, 2011) (citing 20 C.F.R. §§ 416.913(b)(6), 404.1513(b)(6), 416.927(c)(1), 404.1512(e), 404.912(e); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (holding that the ALJ is permitted to reject benefits claim without seeking additional information if there are no gaps in the record and if the ALJ is in possession of the claimant's complete medical history (citing *Perez*, 77 F.3d at 48)).  As discussed above, the ALJ provided several reasons for reaching his decision and discounted Dr. Ram's opinion specifically because he found that it was not entirely consistent with the record, whereas Dr. Ganesh's opinion was consistent with the record.  *See* AR at 89.  Therefore, although it is unclear whether the ALJ requested opinions from Drs. Tiso and Distefano,[5] the specialists' silence did not render the record incomplete because the ALJ's decision to discount Dr. Ram was based on sufficient and consistent evidence, *i.e.*, other medical opinions and supporting medical records.

Moreover, to the extent that the absence of opinions from Plaintiff's specialists did cause a gap in the record, the presence of opinions from both Dr. Ram and Dr. Ganesh filled that gap, thereby obviating the need for the ALJ to request additional opinions.  *See Lewyckyj v. Colvin*, No. 3:13-CV-00126 (MAD/TWD), 2014 WL 3534948, *13 (N.D.N.Y. Mar. 5, 2014) (stating that "[t]he Second Circuit has acknowledged, 'where there are no obvious gaps in the administrative record, and where the ALJ already possesses a "complete medical history," the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim'" (quoting *Rosa*, 168 F.3d at 79 n.5 (citing *Perez*, 77 F.3d at 47))), *report and recommendation adopted*, 2014 WL 3534551 (N.D.N.Y. July 17, 2014).  Furthermore, specialists' opinions on issues related to their areas of specialty are entitled to greater weight than

---

[5] The Court notes that, at the hearing on February 26, 2018, the ALJ asked Plaintiff's counsel if there were any objections to the exhibits being admitted to the record, to which Plaintiff's counsel responded that there were no objections or proffers of additional evidence.

opinions of non-specialists, *see* 20 C.F.R. 404.1527(c)(5); and courts in this Circuit have repeatedly stated that "the ALJ is entitled to rely not only on what the record says, but also on what it does not say in determining a plaintiff's RFC." *Dirisio v. Comm'r of Soc. Sec.*, No. 5:15-CV-1181, 2016 WL 7378930, *4 (N.D.N.Y. Dec. 20, 2016) (citing *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.")); *Riley-Tull v. Colvin*, No. 11-CV-595 (MAT), 2014 WL 2117480, *10 (W.D.N.Y. May 21, 2014) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)). Thus, the ALJ was entitled to afford some weight to Dr. Tiso's and Dr. Distefano's silence and partially rely on such silence, in combination with Dr. Ganesh's opinion and the medical evidence of record, to discredit Dr. Ram's opinion to the extent that it addressed their areas of specialization.

As a result, the Court finds that the ALJ adequately considered the record's support for and consistency with Dr. Ram's opinion when he afforded that opinion less than controlling weight.

### (iii)   ALJ's reliance on Dr. Ganesh's opinion

Plaintiff further contends that the ALJ improperly afforded "significant weight" to Dr. Ganesh's opinion and that the bases on which the ALJ relied for doing so were insufficient to find that Dr. Ganesh's opinion outweighed Dr. Ram's opinion. Specifically, as to Plaintiff's assertion that the ALJ afforded Dr. Ganesh's opinion significant weight based on "vague references to 'mild findings' and 'conservative and non-invasive treatment,'" this argument ignores the ALJ's discussion and summary of Plaintiff's treatment history with Dr. Ram and several specialists during the pertinent time period for his alleged impairments. In large part, the

ALJ's discussion and summary showed treatment in the form of prescription medications and physical therapy; mostly low self-reported pain levels from Plaintiff; and mild to moderate impairment diagnoses based on test and examination results, culminating in Dr. Ram advising Plaintiff to only follow up as needed and seek care from a pain management doctor.  *See* AR at 86-87.  Additionally, the ALJ summarized the findings from Dr. Ganesh's September 2015 consultative examination of Plaintiff, which appeared consistent with the ALJ's summary of Plaintiff's medical history.  *See id.* at 87.  Thus, it appears that the "vague references" that Plaintiff claims the ALJ made when explaining the weight that he gave Dr. Ganesh's and Dr. Ram's opinions actually refer to the ALJ's more detailed discussion of the medical evidence from earlier in his RFC decision.  Accordingly, the ALJ did not weigh Dr. Ganesh's and Dr. Ram's opinions based on "vague references" to mild findings and conservative treatment.

Additionally, as to Plaintiff's argument that Dr. Ganesh did not review any evidence, did not treat him, and only based her opinion on one examination, Plaintiff does not point to any law that is on point indicating that reliance on a one-time consultative examiner's opinion in combination with other medical evidence of record is improper.  Plaintiff cites to *Ruffino v. Colvin* for the proposition that, "when there are conflicting opinions between a treating and consulting source, 'the 'consulting physician's opinions or report should be given limited weight,'" *see* Dkt. No. 14 at 17 (quoting *Ruffino*, 2015 WL 9582704, at *4), but Plaintiff has taken this quotation out of context.  In the two sentences immediately preceding the sentence that Plaintiff quotes, the *Ruffino* court stated that ALJs cannot rely solely on a consultative examiner's opinion to reject a treating physician's opinion based on inconsistency.  *See Ruffino v. Colvin*, No. 13-CV-800A, 2015 WL 9582704, *4 (W.D.N.Y. Oct. 30, 2015) (quoting *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 234 (E.D.N.Y. 2014) (citing *Moore v. Astrue*, 2009 WL 2581718, *10 n.22

(E.D.N.Y. 2009))).  Here, the ALJ made clear that he was giving less weight to Dr. Ram's opinion not solely based on Dr. Ganesh's opinion; rather, the ALJ based his decision on the overall consistency between Dr. Ganesh's opinion and the evidence of record, the inconsistency between Dr. Ram's opinion and the mild findings in Dr. Ram's own records, the inconsistency between Dr. Ram's opinion and the conservative course of treatment she prescribed, and Dr. Ram's status as a non-specialist in combination with the absence of supporting statements from Plaintiff's treating specialists.  *See* AR at 89.  Therefore, *Ruffino* is not on point because the ALJ did not give less weight to Dr. Ram's opinion solely based on Dr. Ganesh's opinion.

Moreover, "[i]t is well-settled that the opinion of a consultative examiner who only examined a patient once can constitute substantial evidence of the ALJ's determination if supported by the record."  *Teddy N.*, 2019 WL 1429519, at *3 (citing *Domm v. Colvin*, 579 F. App'x 27, 28-29 (2d Cir. 2014) (finding ALJ properly assigned more weight to consultative examiner's opinion than treating source opinion despite former being based on one-time examination)); *see also Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (stating that the regulations recognize that opinions from the Commissioner's consultants "'may constitute substantial evidence in support of [RFC] findings'" (quoting *Delgrosso v. Colvin*, 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015) (Suddaby, J.) (adopting Report & Recommendation of Hines, M.J.) (rejecting similar "global objection to reliance on nonexamining medical advisers' opinions" by same plaintiffs' counsel))).  Based on the ALJ's summary of relevant medical evidence and stated reasons for affording Dr. Ganesh's opinion more weight than Dr. Ram's, the ALJ's decision to give Dr. Ganesh's opinion more weight is supported by substantial evidence because a reasonable mind could find that the record supports it.

Furthermore, contrary to Plaintiff's argument, the ALJ is permitted to take the nature and character of a claimant's treatment into consideration when determining what weight to give a medical opinion. *See Tricarico v. Colvin*, 681 F. App'x 98, 100-01 (2d Cir. 2017) (summary order) (finding that ALJ's decision not to give controlling weight to treating physician's opinion and to give consulting examiner's opinion "great weight," which was based in part on inconsistency between conservative nature of plaintiff's treatment and "extreme limitations" that treating physician assessed, was supported by substantial evidence); *Ganoe v. Comm'r of Soc. Sec.*, No. 5:14-CV-1396 (GTS/WBC), 2015 WL 9267442, *4 (N.D.N.Y. Nov. 23, 2015) (stating that "an ALJ may take plaintiff's conservative treatment into consideration as additional evidence to support his overall determination regarding a treating sources opinion" (citation omitted)).

Plaintiff's reliance on *Mecklenburg* to support his argument is also misplaced as the sentence immediately following the sentence that he quotes clarifies that the conservative nature of a claimant's treatment may support an ALJ's conclusion as long as the ALJ also cites to "'other substantial evidence in the record.'" *Mecklenburg v. Astrue*, No. 07-CV-760, 2009 WL 4042939, *7 (W.D.N.Y. Nov. 19, 2009) (quoting *Burgess*, 537 F.3d at 129 (2d Cir. 2008) (citing *Diaz v. Shalala*, 59 F.3d 307 314 (2d Cir. 1995))). Therefore, the Court rejects Plaintiff's argument that the ALJ is not permitted to consider the nature of his treatment to reach a disability decision.

Next, Plaintiff argues that the ALJ oversimplified the treatment notes of record by characterizing them as "mild" and points to various findings in the record to illustrate that doing so was reversible error. This argument is unavailing as Plaintiff appears to be requesting that the Court reweigh the evidence itself to override the ALJ's determination. However, it is well established that "[t]he ALJ has the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination consistent with the evidence as a whole." *Jeffrey C.*

*v. Berryhill*, No. 6:18-CV-505 (FJS/DJS), 2019 WL 3361256, \*4 (N.D.N.Y. May 22, 2019)

(citing *Bliss v. Colvin*, 2015 WL 457643, at \*7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole

responsibility to weigh all medical evidence and resolve material conflicts where sufficient

evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 2014 WL 1123477, at \*10

(N.D.N.Y. Mar. 21, 2014) (same)).  Furthermore, as courts in this District have repeatedly stated,

"'[i]t is not the function of the reviewing court to reweigh the evidence.'"  *Id.* (quoting *Vincent v.

Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) (citing *Carroll v. Sec. of Health and Human

Servs.*, 705 F.2d 638, 642 (2d Cir. 1983))).  Therefore, the Court rejects Plaintiff's argument that

the ALJ committed reversible error by "oversimplif[ying]" the medical evidence of record as

merely an impermissible request for the Court to reweigh the evidence.

Additionally, the Court rejects Plaintiff's brief argument citing to the vocational expert's

testimony.  *See* Dkt. No. 14 at 18.  In sum, this argument amounts to Plaintiff asserting that the

ALJ should have given controlling weight to Dr. Ram's opinion and that, had the ALJ done so,

he would have found Plaintiff disabled because the vocational expert's testimony showed that the

limitations Dr. Ram assessed would preclude Plaintiff from all competitive employment.  This is

merely a circular argument that Plaintiff makes in passing without citing to any legal authority or

explaining how the vocational expert's testimony shows that the ALJ committed error by

discrediting Dr. Ram's opinion.

Furthermore, Plaintiff's argument that Dr. Ganesh's opinion does not support the ALJ's

determination that he can do light work fails.  As Defendant argues, Plaintiff has failed to

illustrate how Dr. Ganesh's opinion that he had "no gross limitations sitting, standing, or

walking" is incompatible with standing and walking for 6 out of 8 hours per day, as required by

the ALJ's finding that Plaintiff can perform a full range of light work.  *See* SSR 83-10, 1983 WL

31251, *5-*6 (1983); 20 C.F.R. § 404.1567(b).  Similarly, Plaintiff has failed to establish how

Dr. Ganesh's opinion that he had "moderate limitations lifting, carrying, pushing, and pulling" is

incompatible with lifting and carrying 10 pounds frequently and 20 pounds occasionally, as

required by the ALJ's finding that Plaintiff can perform a full range of light work.  *See* SSR 83-

10, 1983 WL 31251, *5-*6 (1983); 20 C.F.R. § 404.1567(b).  Plaintiff incorrectly asserts that the

ALJ's RFC finding is unsupported by Dr. Ganesh's opinion merely because it includes abilities

and limitations that Dr. Ganesh failed to discuss.  As Defendant points out, an ALJ's RFC finding

need not perfectly track the entirety of one specific medical opinion from the record so long as it

is consistent with the record as a whole.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)

(summary order) (citing *Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L. Ed. 2d

842 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical

evidence.  The trier of fact has the duty to resolve that conflict.")); *Christina M.F.*, 2019 WL

147463, at *6-*7.  Since the ALJ reached his RFC finding by relying on a combination of

objective medical records; opinions from Dr. Ganesh, Dr. Noia, and Dr. Blackwell; Plaintiff's

testimony to some degree; the vocational expert's testimony to some degree; and the record as a

whole, *see* AR at 86-89, Plaintiff incorrect argues that the RFC finding is unsupported merely

because it does not perfectly track Dr. Ganesh's opinion.

      Finally, Plaintiff's argument that the Court should reverse the ALJ's decision and remand

because the ALJ did not properly explain his RFC finding also fails.  As discussed above, it is

not necessary for the ALJ to discuss every piece of evidence in the record as long as the Court

can "glean" the ALJ's rationale for his decision from the evidence of record.  *See Didomenico*,

2015 WL 5603361, at *9; *Giles*, 2017 WL 2533191, at *4; *Salmini*, 371 F. App'x at 112-13.

Here, the ALJ summarized Plaintiff's disability allegations, function report, and hearing

testimony; Plaintiff's medical records, including his treatment with Drs. Ram, Tiso, and Distefano, and test and examination results; the results from Drs. Ganesh's and Noia's consultative examinations of Plaintiff; and his various reasons for not finding Plaintiff's testimony completely consistent with the medical evidence of record.  The ALJ then listed his reasons for affording weight to the various physician opinions in the record.  The ALJ then concluded by stating exactly which pieces of evidence supported his RFC finding, which included the opinions from Drs. Ganesh, Noia, and Blackwell; the objective medical evidence, which included examination results, testing results, treatment notes, and the nature of Plaintiff's treatment; Plaintiff's own testimony to some extent; the vocational expert's testimony to some extent; and the record as a whole.  As such, it is clear that the Court is able to glean the ALJ's rationale from the ALJ's decision and the record as a whole.

Accordingly, the Court finds that the ALJ did not commit error by affording "significant weight" to Dr. Ganesh's opinion and that the bases on which the ALJ relied for doing so were sufficient to find that Dr. Ganesh's opinion outweighed Dr. Ram's opinion.  Therefore, the Court finds that the ALJ appropriately considered each *Burgess* factor in substance and, therefore, did not violate the treating physician rule when affording Dr. Ram's opinion less than controlling weight.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 14, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 22, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 29, 2021
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge